The Home Insurance Co. v. The North Western Packet Co.

The Home Insurance Company v. The North Western Packet Company.

1. Jurisdiction: IN ADMIRALTY CASES. An action at law upon a bill of lading, to recover damages for the loss of property caused by a vessel navigating the Mississippi river, is not within the exclusive jurisdiction of the Federal courts.

2. —— CONSTITUTIONAL LAW. Article 3, section 2, of the constitution of the United States, conferring judicial power upon the Federal courts in all cases of admiralty and maritime jurisdiction, does not deprive the State courts of jurisdiction in respect to the same subject-matter when exercised under other forms of proceeding.

| 32 | 223 |
| 80 | 243 |
| 32 | 223 |
| 100 | 399 |
| 32 | 223 |
| d112 | 161 |
| 32 | 223 |
| 115 | 398 |
| 32 | 223 |
| 125 | 638 |
| 126 | 39 |
| 32 | 223 |
| 138 | 211 |

The Home Insurance Co. v. The North Western Packet Co.

3. —— JURISDICTION, HOW LIMITED. The remedy sought, and character of proceeding adopted, and not the subject-matter, limits the jurisdiction. If it be by an action at law or in chancery, according to the forms of the common law, instead of a proceeding in admiralty, the constitutional clause does not apply, and the State courts may exercise jurisdiction therein, concurrent with the United States admiralty courts.

4. —— ACT OF 1789. It is accordingly *held*, that section 9 of the act of congress of September 24, 1789, which, after providing that the district courts of the United States shall have exclusive original cognizance in all cases of admiralty and maritime jurisdiction, saves to suitors in all cases the right of a common-law remedy where the common law is competent to give it, is not in conflict with the clause of the constitution above referred to.

5. Corporations: INSURANCE COMPANIES: INCIDENTAL POWERS. An insurance company, the same as other corporations, possesses all incidental or implied powers necessary or proper to carry into effect its general and express ones in respect to the transaction of its business.

6. —— RULE APPLIED. It is accordingly *held*, where the assured, in a policy of insurance upon produce lost in being transported down the Mississippi river, made a claim and instituted suit against the insurance company to recover the amount of the policy, that it was competent for the insurance company, for the purpose of effecting a settlement with the assured, and of the litigation commenced, to arrange with him for, and receive an assignment of, the bill of lading and his claim against the owners of the vessel occasioning the loss, and that it might maintain, in its own name, and recover in an action thereon, the full amount of the loss, though it exceeded the amount of the policy.

7. —— SETTLEMENT OF DOUBTFUL CLAIM. Nor would the claim on the part of the defendants, in such an action, that the vessel on which the produce was shipped was unseaworthy, and that, hence, the policy did not attach nor any liability of the insurers occur thereunder, invalidate such settlement and assignment or affect the right of the plaintiff to recover thereon.

8. Jury and verdict: SPECIAL VERDICT. The refusal of the court to request the jury to find specially, not in respect to a single fact, but upon a conclusion drawn from many facts, and involving the issue to be tried, is not erroneous. Such a course is not contemplated by section 3079 of the Revision.

9. Stamps: CONTRACT. Where a contract was written upon three pages of two leaves of a book in which it was entered, and stamped

upon one page with a six-cent revenue stamp, it was *held*, that it did not sufficiently appear that, in contemplation of law, the instrument was written upon more than one piece of paper, and therefore not sufficiently stamped.

### *Appeal from Lee District Court.*

### FRIDAY, JULY 28.

ACTION at law upon a bill of lading. The petition alleges that, on the 2d day of October, 1868, one W. N. Sturges delivered to defendant, a common carrier, a large amount of grain and other produce, to be transported from Keokuk to St. Louis, and delivered to certain consignees; that the produce was shipped upon a barge called the Frank Lewis, towed by a steamboat called the George D. Palmer; that, through want of care and diligence on the part of defendant and its servants, the barge Frank Lewis was wrecked and sunk, and the produce so shipped therein was totally lost and destroyed; that said produce was, at the time of its loss, the property of Sturges, who assigned and transferred the bill of lading, and all claims of damages on account of said loss, to plaintiff. Copies of the bill of lading, which is in the common form, of the assignment thereof to plaintiff, and the assignment, by Sturges, of his claim, for and on account of the loss, upon the defendant, are made exhibits and attached to the petition. By an amended petition, it is averred and set out that the shipment of the produce in question was made in pursuance of a written contract between Sturges and defendant, wherein Sturges agreed to give defendant all his *freight* consigned to St. Louis from the date of the instrument, August 31, 1868, until the close of navigation in that year, to be transported at certain rates of charges, the defendant binding itself to furnish vessels for that purpose. The amended petition avers that the shipment of the produce was made under said contract.

The defendant filed an answer and amended answer, putting in issue the material allegations of the petition, especially denying that the produce was received by plaintiff and lost on account of want of care, skill and diligence of its servants. By a separate amended answer, objection is made to the jurisdiction of the court, on the ground that "the cause of action declared on is a civil cause of admiralty jurisdiction," exclusively within the jurisdiction of the district court of the United States. A motion to dismiss the case for want of jurisdiction, based upon the cause assigned in the answer last referred to, was overruled.

A verdict for $8,770 was rendered for plaintiff. A motion to set aside the verdict, and for a new trial, upon the ground of alleged errors of the court in giving and refusing instructions, and that the verdict is not supported by the evidence and is contrary to law, was overruled and judgment accordingly entered. Defendant appeals to this court. The other facts of the case are sufficiently stated in the opinion.

*H. Scott Howell* and *Lorenzo Allis* for the appellant:

1. The jurisdiction of American admiralty courts is not to be measured or limited by that exercised by English courts, either at the time of the revolution, or at the time of the adoption of the constitution. *Waring* v. *Clarke*, 16 Curtis, 462, 464, 466, 468; *The Belfast*, 7 Wall. 639; Benedict's Admiralty, ed. 1870, § 261.

In England, both before and after the revolution, jurisdiction of her admiralty courts was much more extensive than then. Black Book of Admiralty, p. 29, Naval laws of Oleron; 24 and 25 Victoria, 1861, ch. 10, § 6.

So was it in colonial courts at the time of the revolution. See Benedict's Adm., ch. 9. So then in Scottish and Irish courts. Benedict's Adm., ch. 8; and so then in France and other countries. Benedict's Adm., ch. 11.

2. The test of American admiralty jurisdiction *is not* the "trial by jury," or a trial by a judge, but is a question between national and State courts, in which the *subject-matter* is to control. *The Genesee Chief*, 19 Curtis, 243, 244; *Waring* v. *Clarke*, 16 id. 464–466; Benedict's Adm. (1870), §§ 192, 194–197, 202.

3. Appellants claim that the United States courts *alone* have jurisdiction of such cases as the one on trial; that they *should have* this exclusive jurisdiction in order that there may be uniformity in the administration of the law; that it is pre-eminently a subject for national control, and that, as the power has been conferred, the national courts cannot refuse to exercise it. If so granted, "congress cannot vest *any portion* of the judicial power of the United States," in courts of the States. *Martin* v. *Hunter*, 3 Curtis, 567.

Constitution, article 3, section 2, grants to the Federal courts judicial power over "all cases of admiralty and maritime jurisdiction."

These were the same words used in the "first plan of government submitted to the convention, and in all subsequent proceedings and reports they were never changed." *Waring* v. *Clarke*, 16 Curtis, 462.

The ninth section, judiciary act 1789, declares "the district court shall have, exclusively of the courts of the several States, * * * original cognizance of all civil causes of admiralty and maritime jurisdiction, * * * saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it."

It is not at all dependent on the act of February 26, 1845. That act is virtually nullified by *Genesee Chief Case*, 12 How. 443; affirmed in *The Magnolia*, 20 id. 296; and in *Hine* v. *Trevor*, 4 Wall. 567.

That the courts of the United States have exclusive jurisdiction in all suits *in rem* is fully established in the fol-

lowing cases: *The Moses Taylor*, 4 Wall. 428–431 (in 1866); *The Hine* v. *Trevor*, id. 556 (in 1866); *The Belfast*, 7 id. 624 (in 1868); *The Eagle*, 8 id. 15 (in 1868); *Jackson* v. *McKinzie*, 17 Am. Law Reg. 470, United States district court, New Jersey.

4. The reasoning in the following citation of authorities establishes that the United States courts have also exclusive cognizance of all causes of admiralty or maritime jurisdiction, whether by suits *in rem* or suits *in personam*. And, under these, appellants claim that if the latter clause of section 9, judiciary act of 1789, is an enlargement of this jurisdiction to the State courts, it is unconstitutional. *Martin* v. *Hunter's Lessees*, 3 Curtis, 565–570; *The Moses Taylor*, 4 Wall. 368; *The Hine* v. *Trevor*, id. 568; *The Belfast*, 7 id. 643; *Bags of Linseed*, 1 Black. 112; *LeLovio* v. *Boit*, 2 Gall. 474; *In re Josephine*, 39 N. Y. 22; 1 Kent's Com. (7th ed.) 403, 404, 412, 413; Dunl. Admr. Prac. 69–84; Benedict's Admiralty (Ed. 1870), §§ 17, 18, 23, 27, 28, 34, 74, 112, 171, 204, 206, 208, 313 *a*, 313 *b*, 362; *Steele* v. *Thatcher*, 1 Ware. 91; *Drinkwater* v. *Spartan*, 1 id. 149; *Schooner Tilton*, 5 Mason, 465; *Thomas* v. *Lane*, 2 Sumner, 1; *Barber* v. *Barber*, 21 How. (U. S.) 591, 592; The Federalist, No. 88, 364–368.

The following are additional reasons for admiralty jurisdiction: There is no statute of limitations there. Benedict's Adm., §§ 574, 575. Can there sue *in rem*, or *in personam*, or both, in some cases. Adm. Rules, 13, 14, 15; 10 Wheat. 473; Benedict, §§ 361, 443. Admiralty courts are always open; proceedings can be had in vacation as well as in term. Act 5th April, 1832. Can have all necessary writs and processes, warrant to arrest, attachment, garnishment and execution. See Adm. Rules, 2, 3, 4; Betts' Pr. 30. Is more expeditious, safe and flexible. Benedict, § 516. Admiralty is the "chancery of the sea."

5. The plaintiff, as an insurance company, was not

capable of taking, or receiving, by purchase, the cause of action, which Sturges, the shipper, claimed to have against the *carrier*, and neither the assignment on the bill of lading, or the separate assignment of September 28, 1860, should have been received in evidence. Angell and Ames on Corporations (8th ed.), §§ 111, 256, note, 260; *Straus* v. *Eagle Ins. Co.*, 5 Ohio St. 63, 64; *N. Y. Ins. Co.* v. *Ely*, 5 Conn. 567, 568; *Grim* v. *Phœnix Ins. Co.*, 13 Johns. 457, 568; 14 Conn. 438, 439, 442, 443.

6. Plaintiffs cannot recover in this case as assignee from Sturges on the bill of lading, and also, something by way of subrogation; for if they recover upon the bill of lading, it must necessarily be for the whole loss, and if Sturges had properly received some part of his loss from the insurance company, that amount would have to be deducted from his claim founded on the bill of lading. He could only be made whole for the loss.

7. That plaintiff could not recover upon any subrogated rights (by which we mean rights or claims arising upon, or by reason of, having paid Sturges any insurance money), is clear. For whether there was, or was not, negligence in navigating said boat at Quincy bridge, Sturges says he knew "when the Frank Lewis was taken in tow by the Palmer, that one rudder was off the Palmer," and this alone would vitiate the policy. The insurance never attached, and no right of recovery could be based on it. Insurance law is strict: the defect need not be contributory to the loss to release the insurer. Smith's Mercantile Law (3d ed.), 464, 465, note; 2 Parsons' Maritime Law, 132, 133; 2 Parsons' Marine Ins. 368; *Paddock* v. *Franklin Ins. Co.*, 11 Pick. 234; *Copeland* v. *N. E. Marine Ins. Co.*, 2 Metc. 439; 1 Phillips on Insurance (5th ed.), §§ 695, 696, 697, 700, 702, 704, 706, 707, 708, 809, 1086, 1087. So that if the jury allowed any thing upon claim made in second amended

petition, it was erroneous; and that they must have done so is evident from the agreement and receipt on record, pages 59, 60, 61.

8. The testimony clearly establishes the. fact that the accident, by which the barge was sunk, happened because the pilots mistook the location of the long pier of the bridge; and also that the absence of the Palmer's rudder was not contributory to the loss of the barge. Hence defendant's tenth instruction, page 40 of record, should have been given, for the cause then would certainly be brought within exceptions in bill of lading, and in that case, by court's instructions, defendant would not be liable. Conklin's Admiralty (1st ed.), 165, 167; Story on Bailments, § 520; *Collier* v. *Valentine*, 11 Mo. 299; Angell on Carriers (last ed.), 176, 177, 184; *Railroad Co.* v. *Reeves*, 10 Wall. 190, 191. It is apparent from the last three points that without stopping to weigh nicely, and balance all the testimony in the case, the verdict was both against the law and the evidence.

9. The court should have directed a special finding of the jury requested by defendant. In it was involved the question of negligence, and the consequent liability of the carrier. In it was involved the question of liability on the policy of insurance. It was the *right* of defendant to demand it. Rev. 1860, § 3079.

10. The contract (book) dated August 31, 1868, should not have been allowed in evidence against defendant's objections, because not properly stamped. *Hugus* v. *Strickler*, 19 Iowa, 416, 417; *McAfferty* v. *Hale*, 24 id. 359.

11. The case should be reversed, if for no other reason, because it is evident from the record, that defendant's attorneys were misled by the court; for that early in the progress of the trial before the jury, plaintiff " offered in evidence" the original assignment from Sturges to plaintiff, and defendant objected; and the court sustained the objection. Plaintiff then filed its second amended petition, setting up the

right to recover by way of subrogation, etc., and *then* they offered again, and the court allowed them *to read in evidence*, said original assignment, on the back of bill of lading. And from that time on, under the rulings of the court, the trial progressed upon the idea that plaintiff was to recover upon *subrogated*, not *assigned*, rights or claims; but the court surprised defendant's attorneys by the contrary view presented in the final instructions.

*Gilmore & Anderson* and *McCrary, Miller & McCrary* for the appellee:

1. The question of jurisdiction was not raised within the time nor in the manner required, and was therefore waived. The facts relied upon appear on the face of the petition, and the question should have been raised by demurrer; but if not by demurrer, certainly by the original answer.

2. This is not a suit in admiralty, but an action *in personam* against a corporation. The fact that an attachment issued as auxiliary to the proceeding, and that a steamboat was levied upon as the property of defendant, does not change the nature of the proceeding. The plaintiff is seeking its "common-law remedy" in a case where the common law is clearly competent to give it. If the saving clause in the ninth section of the judiciary act does not cover this case, what case would it cover or apply to? There must be cases in which a party may choose between a proceeding in admiralty and a common-law remedy, and this is such a case, as the authorities clearly show.

3. The remedy we seek is a common-law remedy. It is of great value to the people. Take it away, and the people of these States will lose the right to sue in their local courts any of the great corporations engaged in navigating our lakes and rivers, and will be compelled, in many cases, to seek their rights in a Federal court, hun-

dreds of miles from their homes, and be denied the right to a trial by jury. See *Taylor* v. *Carryl*, 24 Penn. St. 259 ; 2 Am. Law Reg. 324.

- 4. The right of a State court to enforce a common-law remedy against the owner of a vessel, for breach of a contract of affreightment, has never before been questioned, but often recognized. See authorities already cited, and, also, see *Taylor* v. *Carryl*, 20 How. 583. It is only the remedy "by direct proceeding *against the vessel*, which belongs to the Federal courts alone." See *Hine* v. *Trevor*. A suit in *personam*, with an *auxiliary attachment*, is recognized and expressly named in *Hine* v. *Trevor* as a common-law remedy, and as coming within the saving clause of section 9, judiciary act. See 4 Wall. 571.

5. The constitution of the United States itself confers no jurisdiction upon the United States district court. That court is not named in the constitution. It is created by, and derives all its jurisdiction and power from, the acts of congress. Now, it is conceded that the judiciary act, which creates the district court, does not deny suitors in this class of cases such remedy as the common law was competent to give, but, on the contrary, expressly guarantees them that remedy. The clause of the constitution relied upon by the defense only provides that "the judicial power of the United States shall extend to all cases of admiralty and maritime jurisdiction," etc. The constitution nowhere provides for the exercise of this power, but leaves that to congress. It is well understood that the courts of the United States are courts of limited jurisdiction, and (with the exception of the supreme court) have no jurisdiction, save what is conferred by statute. If, therefore, it should be determined that, in a case like the one at bar, the State courts cannot enforce the common-law remedy, then there is no court anywhere authorized to do this. In other words, the construction of the constitution, contended for by the gentlemen on the

other side, is such as to take from the citizen this common-law remedy, including the great right of trial by jury in the courts of the State, and to give him no similar remedy in the national courts.

6. The defect in the argument for appellant is this: It assumes that there cannot be a remedy at common law and another remedy in admiralty for the same thing. It assumes that, because the constitution and acts of congress give the Federal court exclusive jurisdiction in all cases in admiralty, that, therefore, the courts of common law have no jurisdiction in an action in *personam* to recover damages for any wrong or injury which might have been the subject of a suit in admiralty. In assuming these things, the gentlemen assume the very point to be proven. We insist that there are many injuries for which several actions may lie, and that the party injured in such case may elect which remedy he will pursue. It often happens that the courts of law and of chancery have concurrent jurisdiction over the same causes of action. Miller's Pleading and Practice, page 20, and cases cited in note *x*. And so it often happens that a common carrier of goods by water, by a violation of his contract, may incur a liability for which he may be sued at common law, or for which the vessel may be seized in admiralty. And because a certain court has jurisdiction in the admiralty case, if that remedy is sought, it does not by any means follow that another court may not have jurisdiction in the common-law case, if the suitor elects to avail himself of that. This point is expressly decided in *New Jersey Steam Navigation Co.* v. *Merchants' Bank,* 6 How. 344, where Mr. Justice NELSON, in delivering the opinion of the court, says: "The common-law courts exercise a concurrent jurisdiction in nearly all cases of admiralty cognizance." See Curtis' Condensed Reps., vol. 16, pp. 733, 734.

7. The jurisdiction of the State courts cannot be denied, without holding the latter clause of the ninth section of the

judiciary act to be unconstitutional and void. This is virtually conceded by the arguments on the other side. We deem it quite unnecessary to cite authorities to show that a State court will hesitate long before declaring void an act of congress which has stood for nearly a century — which has been always recognized by the Federal courts themselves as valid, and which was intended to guarantee as far as possible, to every citizen, the invaluable right of trial by jury according to the course of the common law. All doubts (if any) will be resolved in favor of such a statute.

8. It is contended that the plaintiff, being a corporation, could not purchase the claim sued on, and take an assignment thereof, and bring suit upon the same.

To which we answer as follows:

1. This question is not raised by the pleading, and therefore cannot be considered. There is no plea in abatement, nor averment of any kind, anywhere in the pleading, raising or seeking to raise the question of the plaintiff's capacity to sue. A plea to the merits is equivalent to an admission of the capacity to sue. *The Society, etc.*, v. *Town of Pawlet et al.*, 4 Pet. 480. The general issue being pleaded further admits "the capacity of the plaintiff to sue in the particular action which they bring." Id.; *Conard* v. *Atlantic Ins. Co.*, 1 Pet. 386, 387; Curtis' Condensed Reps. 558; *New York Dry Dock* v. *Hicks*, 5 McLean, 115; Rev., § 2969.

As this point was raised for the first time on the trial, and in the form of an objection to the introduction of evidence of the assignment sued on, it was clearly too late.

2. We submit, that a corporation is, in the absence of any clause in its charter prohibiting it from so doing, authorized to purchase and hold property, real or personal. This is one of the incidental powers belonging to all corporations, unless the charter shall otherwise provide. *White Water Canal Co.* v. *Vallette*, 21 How. 424, and

The Home Insurance Co. v. The North Western Packet Co.

authorities cited; *New Haven Steamboat Co.* v. *Vanderbilt*, 16 Conn. 426 ; Angell & Ames on Corp., §§ 110, 111, 228, 229.

3. Defendants admit that plaintiff is a corporation, and it was therefore unnecessary to prove it. As the right to sue is nowhere denied, and there is no allegation that plaintiff had no power to hold and sue upon the contract in question, the presumption, in the absence of all evidence, would be that plaintiff had not violated its charter.

4. It is, however, clearly proven, that the claim sued on was obtained in the ordinary and regular course of the plaintiff's business as an insurance company.

The plaintiff was entitled to recover the whole amount of the damage due to Sturges and assigned to plaintiff.

The bill of lading and claim for damages were assignable. Rev., §§ 1797, 1798, 1799 ; 1 Pet. 385, 455 ; 1 Iowa, 143 ; 11 id. 59 ; 13 id. 547.

5. There was no error in the refusal of the court to instruct the jury to make a special finding in answer to the interrogatory presented by defendants. The court instructed the jury fully and correctly upon the point referred to in the interrogatory. Defendants were not prejudiced by said refusal. *Hatfield* v. *Lockwood et al.*, 18 Iowa, 296 ; *Bonham* v. *Iowa Central Insurance Co.*, 25 id. 328.

BECK, J. — I. The question of jurisdiction submitted to and decided by the district court, upon the motion of plaintiff to dismiss the action, first demands our attention. It is this: Is this action, brought to recover upon a bill of lading for the loss of property caused by a vessel navigating the Mississippi river, within the exclusive jurisdiction of the district court of the United States? Without delaying to pass upon any objection as to the time or manner in which the question was presented to the court below, we will proceed at

1. JURISDICTION: in admiralty cases.

once to its consideration. The position of counsel for plaintiff is, that the action is a case of admiralty and maritime jurisdiction within the exclusive cognizance of the United States district court. Counsel rest the support of their position upon article 3, section 2, of the constitution of the United States. The consideration and interpretation of this provision, so far as may be found necessary to determine the question before us, now devolves upon us. It is in these words: "The judicial power shall extend to all cases in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, other public ministers and consuls; *to all cases of admiralty and maritime jurisdiction;* to controversies to which the United States shall be a party; to controversies between two or more States; between a State and a citizen of another State; between citizens of different States, between citizens of the same States claiming lands under grants of different States, and between a State or the citizens thereof, and foreign States, citizens or subjects."

It will be observed that the judicial power of the United States, under this provision of the constitution, extends to three classes of cases, determined, respectively: 1. By the subject-matter of the action wherein the power is exercised; 2. By the parties thereto; and 3. By the remedy to be enforced or course of proceedings adopted. We will proceed, by considering the language used, to point out the reasons supporting this classification. In the course of this investigation, by regarding alone the true meaning of the words used, we will discover principles which will aid us in the final solution of the question of jurisdiction involved in this case.

The word "cases," three times used in this section, must be understood in its legal, technical sense as meaning contested questions before courts of justice, suits or actions.

The word was so understood by the United States supreme court in *Osborn* v. *U. S. Bank*, 9 Wheat. 738. Chief Justice MARSHALL, construing the identical section of the constitution now under consideration, uses this language: "This clause enables the judicial department to receive jurisdiction to the full extent of the constitution, laws and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the constitution declares that the judicial power shall extend to all cases arising under the constitution, laws and treaties of the United States." The clause under consideration then, by the use of the word "cases," means that the judicial power shall extend to certain actions wherein, according to the forms of law, the rights of parties are presented for adjudication. The first clause of the section confers judicial power in actions arising under the constitution, laws and treaties of the United States. That is, where rights are given or preserved, or liabilities accrue under them, whenever they affect or operate upon parties to actions, to such actions the judicial power of the United States extends. Here, then, the judicial power is determined in a class of cases by the subject-matter of the action. The conditions, character or citizenship of the parties to the actions have nothing to do with the jurisdiction of the United States courts. For instance, if an action arises between citizens of the same State, under the laws of the United States, the Federal courts take jurisdiction thereof. It will be seen that, in this class of cases, the subject-matter and not the parties is the test of jurisdiction. The Federal judicial power in such instances extends to all cases in *law and chancery*, separate jurisdictions existing in the States when the constitution was adopted, and which had been found sufficient

for the administration of justice to the people. The system of jurisprudence then prevailing was, doubtless, recognized by the framers of the constitution, and it was intended that all rights arising under the constitution, laws and treaties of the United States should be settled by actions in the jurisdictions of law, chancery and admiralty in which justice was then administered.

To this class of actions belong controversies between citizens of the same State claiming lands under grants of different States.

The second class of actions are those in which the jurisdiction of the Federal courts is determined by the parties. These are all actions against "ambassadors, other public ministers, and consuls," and "controversies to which the United States shall be a party ; to controversies between two or more States; between a State and citizens of another State, between citizens of different States. *     *     * And between a State or the citizens thereof, and foreign States, citizens or subjects." It is very plain that whatever may be the subject-matter of such actions, jurisdiction therein is conferred upon the United States. The use of the word " controversies" in the latter part of the section, in the place of the term "cases," before used, cannot fail to attract observation. It is broader in its meaning than the term it supersedes, especially as that term is qualified, when first and last used, in the section under consideration. It is not improbable that it is used for this reason. This appears quite reasonable, when we consider that, in some controversies in which jurisdiction is conferred, " cases" or actions could not have been prosecuted before the constitution in any forum, as controversies between States, and actions against a State by citizens of another State, or by a foreign state, citizens or subjects, of which jurisdiction has been taken away by an amendment. As no actions could then be prosecuted in such instances, it may have been thought that no power

would have been conferred if the word " cases" had been used. But, for whatever reason the word " controversies " is used, it appears to us to be of more general and extensive import, so far as it relates to the occasion for the exercise of power, than the other word " cases " used for the same purpose.

The third class of cases to which the judicial power of the United States extends, is determined by the remedy sought, the course of proceeding had, the form, manner and forum in which the actions are prosecuted. It is prescribed that the Federal jurisdiction shall extend " to all cases of admiralty and maritime jurisdiction." The word "jurisdiction" in this connection relates to the forum and course of proceedings. Thus we speak of cases of chancery jurisdiction, meaning thereby actions cognizable in a court of chancery within the limits of the authority of chancery courts. In this class the judicial power conferred is limited by the authority of the court of admiralty; cases within its jurisdiction are cognizable in the Federal courts. It is readily seen that the parties to such actions have nothing to do in determining the jurisdiction to which they are assigned. And we think it is equally as plain that the same is true of the subject-matter of the action. As we have before pointed out, a " case " is a contested question before a court of justice, submitted in the form prescribed by law, which will call into exercise the judicial power.

Proceedings are necessary to create a case and enter into the idea expressed by the term. When we speak of a case at law, in chancery or in admiralty, we mean a judicial question submitted to a court of one jurisdiction or another, according to the form of proceedings prescribed by law. The form of these proceedings, and not the subject-matter of the case, determines its character and to which jurisdiction it belongs. The course of proceedings necessary to call into exercise the judicial power at once decides to what forum it must be assigned. The subject-matter of the

action, the rights to be affected or property to be reached, may be alike the foundation of an action in one jurisdiction or another. The remedy sought dictates the proceeding to be instituted, the means whereby the judicial power is applied to the subject. The proceedings give character to the case, and assign it to the proper jurisdiction. We conclude that the subject-matter of the action is not the test of jurisdiction in this class of cases.

In this view a contested question, involving rights and property of parties, if the remedy sought is alone authorized by the proceedings peculiar to a certain forum, must be brought therein; but, if authorized by the proceedings of another, the action, at the option of the plaintiff, may be instituted in either court, both having concurrent jurisdiction. Such cases are of frequent occurrence in the administration of the law.

The clause of the constitution in question confers judicial power in actions maritime, and in admiralty. It does not 2——constitu- deprive the State courts of jurisdiction over tional law. the same subject-matter, when exercised under other forms of proceeding. Admitting that the power conferred is exclusive, yet it is limited to certain forms of proceedings to be exercised therein. Therefore, if the proceedings pursued in any case are those of admiralty, the State courts cannot acquire jurisdiction thereof. But if the action be at law or in chancery, although founded upon a subject-matter which, under proper proceedings, could have been brought before an admiralty court for adjudication, it is cognizable there.

It is very clear that the reasons for conferring judicial power upon the Federal courts in admiralty cases are based 3——jurisdic- upon the remedies sought and proceedings tion: how limited. prevailing in that jurisdiction, rather than upon the subject-matter involved. In cases *in rem* or *in personam*, where ships are to be seized, or property upon shipboard is to be subjected to the judgment of a court, it

was, doubtless, thought by the framers of the constitution that these remedies could be more efficiently enforced by the United States, being provided with a naval force that can be called to the aid of officers of United States courts in executing their process.   The proceedings and practice in admiralty courts are peculiarly adapted to enforce the rights of seamen and protect them from wrong.   Being a class of citizens that are abroad upon the seas, they are peculiarly within the protection of the national government.   It is proper that a Federal court should be open to them, where their rights may be speedily adjusted.   Other instances, where the remedies necessary to do justice to parties appear to require proceedings peculiar to courts of admiralty, and that the law should be therein administered by the United States, could be mentioned.   But in other cases there seems to be the most weighty reasons why the Federal court should not be clothed with exclusive jurisdiction to determine questions affecting the rights of parties in these courts.   One instance will be sufficient to illustrate the position here assumed, though many others could be mentioned.   Upon a contract of affreightment between citizens of a State there arises a claim for damages for its breach, by one party against the other.   It is simply a contract for the transportation of property upon shipboard. An action thereon, it has been held, is within the jurisdiction of admiralty courts.   Can any sound reason, based upon considerations of the due and proper administration of law, be given why the case should be exclusively within such jurisdiction?   Why shall it be said that the State government, which is capable of adjudging between the parties upon all other kinds of contracts, must be deprived of jurisdiction in this case?   We are unable to discern any sound reason to support the doctrine of exclusive jurisdiction in such a case, based upon the demands of justice and the due administration of the law.

Upon this course of reasoning, based upon the constitu-

Vol. XXXII. — 31

tion itself, we arrive at the conclusion that the judicial power of the United States, in admiralty cases, is limited by the proceedings had, the form, manner and forum in which actions, under the law in that jurisdiction, are prosecuted; and that exclusive jurisdiction is not bestowed upon the Federal courts over subjects which may be the foundation of actions in admiralty, and also according to the course of the common law, in chancery or at law. In such cases the State courts have concurrent jurisdiction with the United States admiralty courts.

That such is the congressional interpretation of the constitution of the United States, and that, if under the clause in question the exclusive judicial power in admiralty cases may be assumed by the United States, it has not been but is preserved to the States, is made plain by the act of congress of the 24th of September, 1789, section 9, which is in these words: "The district courts * * * * shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation or trade of the United States, * * * * * * saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it."

4. —— act of 1789.

Counsel for defendant contend that if this act, in effect, attempts to preserve jurisdiction in the State courts of any matter which, in a proper action, is cognizable in admiralty, it is in conflict with the clause of the constitution of the United States considered above. But as we do not hold that that clause confers exclusive jurisdiction in this class of cases upon the Federal courts, our discussion of that question is a sufficient answer to this position of counsel.

In case it be conceded that, under the constitution, congress may confer upon the Federal courts exclusive jurisdiction of all questions that may be cognizable in admiralty, it is, as we have just remarked, very clear that this

has not been done by the statute cited above; but, on the other hand, jurisdiction is preserved therein to the State courts, in all cases where the common law provides a competent remedy. The language of the statute requires no extended discussion. It saves to suitors the right of a common-law remedy where it existed. Remedies applicable to subjects, which, in many instances, form the foundation of actions in admiralty, are afforded by the State courts under the common law. These are saved to suitors. This doctrine has been repeatedly recognized by the United States supreme court. *Waring* v. *Clarke*, 5 How. 441 (460); *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 id. 344 (390); *The Genesee Chief* v. *Fitzhugh*, 12 id. 443 (459); *The Belfast*, 7 Wall. 624 (644); *The Moses Taylor*, 4 id. 411 (431); *The Hine* v. *Trevor*, id. 555 (571).

II. The counsel of defendant contend that plaintiff has not the capacity to maintain this action, as the assignee of the bill of lading and of Sturges' claim against defendant; that its only right to sue is as an equitable subrogee to the extent of the amount paid upon the policy to Sturges. Upon the trial, objection having been made to the introduction of certain evidence, the plaintiff filed an amended petition, to the effect that the assignments set up in the petition were made in furtherance of plaintiff's right of subrogation to the claim of Sturges upon the defendant, and for the purpose of closing up and settling the matters of insurance and litigation pending between plaintiff and Sturges, in regard to the loss of the produce. Defendants' counsel insist that plaintiff can recover to no greater extent than the amount paid upon the policy to Sturges, and in no other capacity than as his subrogee. It is argued that the amended petition bases the right to recover upon the equitable subrogation of plaintiff, under the policy, to the rights of Sturges. This is a misapprehension of the

5. CORPORATIONS: insurance companies: incidental powers.

amended petition. It sets out the fact that the assignment was made because of plaintiff's right of subrogation, and to effectuate the settlement of the claim he held against plaintiff, growing out of the insurance and litigation pending in regard to it.

No issue was tendered in the petition as to the capacity of plaintiff to maintain this action, and its incapacity is not set up as a defense to recovery. Had the petition averred plaintiff's capacity to maintain the suit, it would have been taken as true without a denial thereof in the answer. Rev., §§ 2923, 2925.

Upon the trial defendant admitted that plaintiff is an insurance company duly incorporated and existing under the laws of the State of New York. This is the only fact appearing in the record, other than the fact that the policy was issued and the loss thereon paid to Sturges, tending to disclose the power possessed by plaintiff, and whether it was authorized to accept an assignment of the bill of lading and of Sturges' claim against defendant, and prosecute the action thereon.

The plaintiff, being a corporation, is presumed to be endowed with the usual powers necessary and proper to enable it, as such, to carry out the purposes of its existence. It was organized for the object of carrying on the business of insurance ; it has the power so to do, and all incidental powers necessary or proper to carry into effect the general power to transact business of that kind. This is undoubtedly in accord with a rule applicable to all corporations. Angell & Ames on Corporations, §§ 110, 111; *Matter of Howe*, 1 Paige, 214; *Insurance Co. v. Perkins*, 38 N. Y. 404; *Ferry v. People's Insurance Co.*, 2 Rob. 599; *Beers v. Phœnix Glass Co.*, 14 Barb. 362; *Barry v. Merchants' Express Co.*, 1 Sanf. Ch. Pr. 280.

In our opinion, the power to accept the assignment of the bill of lading and the claim of Sturges is necessary to enable plaintiff to carry on its business, and is, therefore,

The Home Insurance Co. v. The North Western Packet Co.

an incidental power with which it is clothed. It, of course, has power to receive and make payment upon its contracts. If it be sued, it has the incidental power to settle the action against it, and if, in such 'settlement, it be found necessary for its interest to receive property of any kind, we know of no principle of law that will prohibit it. It appears that after the loss, for the purpose of effecting a settlement with Sturges of a suit instituted upon the policy, the arrangement for the assignment of the bill of lading and claim of Sturges on defendant was entered into and perfected. By it, plaintiff is required to pay to Sturges a portion of the amount sued for in case of recovery. If this arrangement was necessary in order to protect the interest of plaintiff, it is authorized under the principles above announced in the exercise of incidental powers. It may be regarded, as it was designated in the argument by defendant's counsel, as the purchase of a chose in action, yet if such an act be necessary to carry on the proper business of the plaintiff, — and that the settlement of a law suit was within the proper business, cannot be doubted,— it is, as is the purchase and holding of other property for proper purposes, within the implied powers of plaintiff. We think these views are well supported by reason and in accord with the authorities above cited.

III. It is insisted by defendant's counsel, that as the vessel upon which the produce was shipped was unsea-worthy, the policy did not attach, and there-fore there was no liability of plaintiff there-on. That under these circumstances the assignments to plaintiff gave it no power to institute and prosecute this action, as it had no power to receive the assignments. This question is raised upon the refusal of the court to give certain instructions. Whatever may have been the effect of the unseaworthiness upon the policy, it cannot be disputed but that a claim was based upon the instrument against plaintiff, which was settled as above stated. Plain-

tiff, the same as a natural person, has the right to settle all claims against it, and its action in this matter is presumed to have been in good faith, for innocence, rather than wrong, will be imputed to the acts of corporations as well as of men. Angell & Ames on Corps., § 111; *Chautauqua Co. Bank* v. *Risley*, 19 N. Y. 369, 381. Receiving the assignments in the settlement of the action against plaintiff was therefore done in the exercise of an implied power, as though the binding force of the policy had not been affected by the unseaworthy character of the vessel.

IV. The defendant requested the court to require the jury to respond to the following question, viz.: "Was the loss of the property described in the bill of lading caused by a peril of river navigation?" This request was properly refused. The question involved the very issue in the action. An answer thereto would have required, not the simple statement of a single fact found by the jury, but of a conclusion drawn from many facts, which is not contemplated by Revision, section 3079, under which the request was made. The answer, had it been required, would have been quite as indefinite as a general verdict, and would have failed to answer the purposes for which the law allows such questions to be propounded.

V. There was evidence tending to prove that one of the rudders of the steamboat towing the barge was wanting at the time of the loss. The defendant asked the court to instruct the jury, in effect, that if the absence of the rudder did not contribute to the accident which was the occasion of the loss, then the want of it did not affect the defendant's liability. The instruction was refused. An issue as to the unseaworthiness of the boat was not raised under the instructions given by the court and submitted to the jury, nor made by the pleadings. They were instructed to determine whether the loss was caused by the want of proper care, prudence and skill of the officers of the boat.

The Home Insurance Co. v. The North Western Packet Co.

The instruction asked, not being relevant, was properly refused.

VI. Complaint is made on the ground that, after the filing of plaintiff's second amended petition, the cause was conducted by attorneys of defendant on the supposition that plaintiff claimed under subrogation to the right of Sturges, and that counsel were surprised by the contrary view presented by the final instructions to the jury. The record fails to support the question of fact here stated. It does not appear that the action was conducted as counsel state. Certainly no foundation for the statement is found in the amended petition itself, which, as we have before stated, avers that the assignments were made "in further-ance of plaintiff's right to subrogation," and for the purpose of a settlement of the controversy and litigation relating to the policy of insurance.

VII. The contract between Sturges and defendant, under which the shipment was made, was written, in the language **9. STAMPS:** of the record, "upon three pages or upon two **contract.** leaves of the book containing the same," and was stamped upon one page with a six cent revenue stamp. It is claimed that the instrument, not having a five cent stamp upon each sheet or piece of paper upon which it is written, is insufficiently stamped. We are unable to reach the conclusion that the facts support the position of de-fendant, namely, that the instrument was written upon separate sheets or pieces of paper. It is not made to ap-pear affirmatively by the record that in contemplation of law the instrument was written upon more than one piece of paper, and therefore was not sufficiently stamped.

We have considered all objections made by the appellant and find no error in the proceedings. The judgment is therefore

Affirmed.