HOME SAVINGS & TRUST COMPANY, Appellant, v. FIDELITY & DEPOSIT COMPANY OF MARYLAND.

**Building and Loan Associations:** *May take bond that prescribed security will be furnished.* Code, section 1898, forbids building associations to make loans except of real estate security, or on security of their own stock. The articles of a building association prohibited a loan on real estate for more than one-half its appraised value. *Held*, that though the building association could loan money only on the security prescribed by statute, it could, on receiving an application for a loan ex-

ceeding twice the value of the real estate offered as security take a bond conditioned for the erection of such improvements on the land as would make the real estate exceed twice the loan, the loan not being made, in such case, on the security of the bond, but it being taken only as incidental to the loan, and to assure the proper security; and such bond was valid.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

MONDAY, JANUARY 27, 1902.

ACTION on a bond. From judgment dismissing its petition, the plaintiff appeals.—*Reversed.*

*Dudley & Coffin* for appellant.

*Phillips, Ryan & Ryan* for appellee.

LADD, C. J.—Section 1898 of the Code authorizes building and loan associations to make loans "to members on such terms, conditions and securities as the articles of incorporation and by-laws provide; said loans to be made only on real estate security or on security of their own shares of stock and not to exceed 90 per cent of the withdrawal value thereof;" and plaintiff's articles of incorporation prohibit a loan "upon real estate security for a greater amount than 50 per cent of the sworn appraisement of the real estate unless by a vote of the directors, and then only when the cash value of the shares held by the borrower added to the sworn appraisement of the real estate shall equal twice the amount of the loan." Thus the plaintiff is limited, in loaning its money, to two classes of security, and thereby prohibited from doing so on any other. But, in carrying out this power to loan on real estate it also has, by necessary implication, the right to employ such reasonable means, if not illegal, as seem necessary to safely accomplish this

object. *Home Ins. Co. v. Northwestern Packet Co.,* 32 Iowa, 223. As said in *Berry v. Insurance Co.,* 94 Iowa, 135. "In the absence of restriction, corporations have the implied power to do what is necessary or proper to carry out the business for which they are created." The rule is well stated in volume 4 of Thompson on Corporotions: "It is a general principle of law that every corporation has, by necessary implication, the power to do whatever is necessary to carry into effect the purposes of its creation, unless the doing of the particular thing is prohibited by law or by its charter.    *    *    *    This doctrine is couched in various forms of expression.    *    *    *    One form of expression is that whatever may be fairly regarded as incidental to and consequential upon those which are authorized by the charter of a corporation will not be held by judicial construction to be *ultra vires* unless expressly prohibited.    *    *    *    The meaning is that it carries with it by implication a grant of the right to use all such powers as a natural person might properly and lawfully use to accomplish the same result under similar circumstances."

II. If, then, the bond accepted by plaintiff was not taken as security for the money loaned to Meader, but as incidental to the making of the loan on security exacted by the statute, and to assure such security on his part, it would seem to be merely one of the means which might be resorted to in carrying out its powers. It appears that Meader's request to borrow money was at first refused, but that subsequently he accompanied a written application for a loan of $1,000 on a lot represented to be worth $350, on which he claimed a brick building costing $1,500 was in course of erection, with the bond sued on, in the sum of $1,000, signed by him, and duly executed by defendant as surety, conditioned, in substance, that the principal complete the building according to plans and specifications exhibited, and pay for all labor and material therein, freeing the same from all claims or liens whatsoever within four months. Thereupon the

loan of $600 for a period of seven years was approved, 10 shares of stock issued to Meader, who had not previously become a member, and these assigned as security to plaintiff. He also executed to it a note for the amount, and mortgage on the lot. Though the borrower did no more than lay a brick foundation, some of the money, at least, appears to have been advanced for him. Thereafter, on foreclosure proceedings, $50 was realized from the lot, and this action on the bond is for the balance of the amount loaned. The real estate was not appraised, but, as the improvement had not been made, this was impracticable until completed. Had the building been completed as proposed and stipulated in the bond, the value of the security would have execeeded double the amount of the loan. But for this bond, the loan would not have been made, and undoubtedly the plaintiff relied on the assurance it contained that the building would be erected. The obligation was that Meader would erect the building according to the plans and specifications, not that he would repay plaintiff the money borrowed; and plaintiff's action was not for money loaned him but for damages occasioned by the omission to improve the lot as promised. It would be a strained construction to hold that a bond stipulating for a certain improvement is security for the repayment of money within the meaning of the statute quoted. Incidentally it may render the loan safe. Many other circumstances entirely permissible might have had the same result. The very object of plaintiff's organization is "to furnish money to its members upon sufficient security (section 1890, Code); and this from a fund to be accumulated from the gradual payment of stock and from membership fees, fines, dues, premiums, and interest (section 1898, Id.) While the use of the money by the borrower is not by statute restricted, the nature of such corporations and their history leave no doubt that the fundamental purpose of their existence, aided by the privileges granted and exemptions allowed, is to assist members, by small periodical payments,

to acquire homes. Ordinarily, they have little or no means out of which to buy these ready for occupancy, or to purchase the land and erect buildings thereon. The money to do this is necessarily advanced by the association, and usually not to buy with improvements made, but to procure the lot and to enable the borrower to construct a dwelling suitable to his own needs and tastes. From their inception in this state it has been the practice of such associations to aid members in constructing dwellings and other buildings, which in large measure will become security for the money advanced. While labor and materials might be paid for directly by the association from the loan, we do not think the parties limited to that method. Other assurances may be furnished that the improvements shall be made, and a bond so stipulated we do not think inimical to the statute prohibiting loans to be made on security other than real estate and stock. It was one of the means which plaintiff might resort to in carrying out the powers conferred. Other matters referrd to in argument either depend on this ruling or upon other evidence which may be introduced.

For the error in excluding the bond when offered in evidence, the judgment in REVERSED.