GRANT MORROW, Guardian, v. NATIONAL MASONIC ACCI-
DENT ASSOCIATION, Appellant.

**Accidental death:** EVIDENCE. In an action to recover for an accidental death, in which it was contended that death resulted from disease, the evidence is considered and held to present a question of fact for the jury.

**Special interrogatories.** Special interrogatories that are ambiguous; that assume the existence of a fact which is in dispute; that concern a conceded fact; that call for the conclusion of the jury, which must

of necessity be based upon the finding of several facts; that require an answer which would be determinative of the case; or, if answered as desired, would not effect the general verdict, should be refused.

**Prejudicial instructions.**  In an action on an accident policy, the court charged that the issue was whether the death was caused solely by the injury or partly or wholly by disease, and that the jury should determine such issue from the evidence including the testimony of physicians, evidence as to deceased's condition as disclosed by a post mortem examination, and that it might also consider the condition of deceased's health prior to the injury, the manner or nature of the injury, and his complaints of pain up to the time of his death. Held that such instruction was not prejudicial to defendant as a special plea on plaintiff's behalf.

**Expert evidence:** QUALIFICATION OF WITNESS. A physician shown to be qualified to testify as an expert, is not required to detail the facts upon which his conclusions are based, but if so required, the error is harmless where the witness complies with the requirement and his testimony was received.

**Expert evidence:** INSTRUCTIONS. An instruction that the opinions of expert physicians as to the cause of a death were not binding on the jury, but that it was for them to determine the cause of death from all the facts, including the opinions of such experts, and to give such evidence the weight they deemed it entitled to, considering the knowledge and skill of the witnesses, was not objectionable as belittling the testimony of such experts.

*Appeal from Polk District Court.*— HON. S. F. PROUTY, Judge.

SATURDAY, NOVEMBER 19, 1904.

SUIT at law to recover upon an accident insurance policy issued to Alves C. Tillman, who was injured in an accident in December, 1901, while the policy was in force, and who died in February, 1902, as the plaintiff claims, solely from the effects thereof. The defendant is an assessment association, and its by-laws, which form a part of its contract of insurance, provided as follows: " No benefit shall accrue or be paid * * * for any death * * * or disability happening directly or indirectly, wholly or in part,

accidental or otherwise, because of or resulting in or from
any disease or bodily or mental infirmity;   *   *   *   nor
shall any benefits whatever accrue or be paid to any member
or his beneficiary unless the said member or his beneficiary
shall have furnished the association, within the time pre-
scribed by these by-laws, with absolute and satisfactory
proof that the death or disability of the said member was
purely accidental, and the direct result of the accident, and
that the accident was the sole and only cause of the said
member's death or disability;" and, further, that "mortu-
ary benefits shall accrue when a bodily injury directly
caused by external, violent, and accidental means other than
those excepted in these by-laws, shall of itself alone, inde-
pendently of all other causes, occasion the death of a mem-
ber within ninety days from the date of such injury." In its
answer the defendant alleged that the death of said Till-
man was caused wholly or in part by disease existing prior
to the accident, and was not occasioned by violent and acci-
dental means, within the terms of the policy. There was
a trial to a jury, and a verdict and judgment for the plain-
tiff. The defendant appeals.— *Affirmed.*

  *Woodin & Ayers,* and *N. T. Guernsey,* for appellant.

  *Clark & McLaughlin,* for appellee.

  SHERWIN, J.— A thorough post-mortem examination
disclosed the fact that A. C. Tillman was afflicted with
endocarditis at the time of his death, and there was much
testimony offered by the appellant which tended

1. ACCIDENTAL
DEATH: evi-
dence.

very strongly to sustain its claim that this
disease, and not the injury received in the
accident, was the cause thereof. It is ably and exhaustively
argued that the judgment should not be permitted to stand;
because of the insufficiency of the evidence supporting the
verdict, and we are insistently asked to reverse on account
thereof. We have given the record in this case the careful

examination necessary to decide this important question, and reach the conclusion that we should not hold as a matter of law that the evidence does not sufficiently sustain the verdict. Were no facts and circumstances proven tending to show that the disease existing at the time of death may have been caused by the injury received, or, if in fact existing before the accident, that it had not in any way theretofore affected the health or physical condition of the deceased, we might be led to the conclusion that the testimony of Dr. W. W. Hale was of too indeterminate a character to alone rest a verdict and judgment upon. But the facts and circumstances proven by other evidence and the testimony of Dr. Hale considered together presented a fact question for the determination of the jury, and we cannot say as a matter of law that the conclusion reached was wrong. The physicians who made the post-mortem examination found the diseased condition of the heart to which we have already referred, and also discovered spots upon the right foot, which were caused by the complete plugging of the femoral artery near the knee by clotted blood and vegetation from the diseased heart, carried to the point in the artery by the blood flowing therefrom. The deceased's side was injured by the accident, and the autopsy disclosed that the colon, or large intestine, immediately beneath the place of the injury, was affected with gangrene which was undoubtedly the immediate cause of Mr. Tillman's death, and that an obstruction had lodged in one of the small branches of an artery which furnished blood for the portion of the colon which was found diseased. It was the contention of the appellant in the court below, as well as here, that the endocarditis antedated the injury, and that the obstacle found in the artery carrying blood to the colon was caused by the diseased condition of the heart, and was the cause of the gangrenous condition of the colon. The appellee's theory was and is that the endocarditis was either caused by septicæmia, produced

by the injury, or, if not so caused, that it was not a factor in causing the death of Mr. Tillman.

As we have heretofore said, there was abundant evidence tending to support the appellant's theory, and in due time it requested that the following special interrogatories 2. SPECIAL INTER- be submitted to the jury for its finding thereon: ROGATORIES.  " Was the gangrenous condition disclosed at and about the junction of the colon and small intestines at the autopsy on the body of Alves C. Tillman caused by the fall suffered by said Tillman on or about December 14, 1901, or by disease known as ' endocarditis,' existing before said fall? Was the gangrenous condition disclosed at and about the junction of the colon and small intestines at the autopsy on the body of Alves C. Tillman caused by an obstruction of the branch of the mesenteric artery which supplied the blood for this gangrenous portion of the intestines? Was Alves C. Tillman suffering from the disease known as endocarditis at the time of his death? Was the disease known as endocarditis the cause, or one of the causes, of the death of Alves C. Tillman? What was the cause of the endocarditis with which Alves C. Tillman was affected at the time of his death? Did the disease known as endocarditis exist in the case of Alves C. Tillman before the fall he suffered on December 14, 1901? Was the fall suffered by Alves C. Tillman on or about December 14, 1901, the sole and only cause of his death? Did the decedent, Alves C. Tillman, prior to November 30, 1901, have the disease known as endocarditis? Was the gangrenous condition disclosed at and about the colon and small intestines at the autopsy on the body of Alves C. Tillman the immediate cause of his death?

The first question is at least ambiguous, if it does not in fact assume that the endocarditis existed before the fall — a disputed question — and was therefore properly refused. *Scagel v. C., M. & St. P. Ry. Co.*, 83 Iowa, 380. There was no error in refusing the third request, because

it was conceded that endocarditis existed at the time of death. Questions 2, 4, and 5 called for the conclusions of the jury, which must, of necessity, have been based upon the finding of several facts, and were therefore rightly refused. *Home Ins. Co. v. Packet Co.*, 32 Iowa, 223; *Lewis v. Ry. Co.*, 57 Iowa, 127; *Thomas v. Schee*, 80 Iowa, 237. Questions 7 and 9 also called for the conclusions of the jury based upon several facts, and the former required an answer which would have been determinative of the case, and was for that reason alone properly refused. *White v. Adams*, 77 Iowa, 298. Furthermore, the ninth called for an answer to a question which was practically undisputed. The sixth and eighth interrogatories are, in substance, the same, and an answer in the affirmative could not have affected the general verdict because of the conflict in the evidence as to whether the gangrenous condition of the intestines was caused by the endocarditis or the endocarditis caused by the gangrene. *Scagel v. Ry. Co., supra; Dreher v. Railway Co.*, 59 Iowa, 601; *Hawley v. Railway Co.*, 71 Iowa, 720.

The court instructed that the issue between the parties was whether the death of Mr. Tillman was caused solely by the injury which he received, or partly or wholly by endocarditis, and said that this issue was for the jury to determine from all the facts and circumstances disclosed in the evidence, including the testimony of the physicians as to his condition after the injury and before his death, and also his condition as disclosed by the post-mortem examination. In addition to this, the jury was told that it might also consider the condition of Mr. Tillman's health before the injury, the manner and nature of the injury, and his complaints as to pain therefrom up to the time of his death. Taking the instruction as a whole, we do not think it vulnerable to the criticism that it was a special plea in behalf of the plaintiff, or that it was prejudicial to the appellant.

3. PREJUDICIAL INSTRUCTIONS.

The only witnesses examined by the appellant as ex-

perts were physicians who had either attended Mr. Tillman in a professional capacity after the injury, or were present and took part in the post-mortem examination. Yet before they were permitted to testify their conclusions as to the cause of his death they were required to detail all of the facts upon which such conclusions were based. These rulings were, in our judgment, clearly erroneous, because every conclusion testified to was based upon actual knowledge of the physical condition of the deceased, and further, because the rule has never to our knowledge, been applied to witnesses who were in fact experts in the matters upon which they were called to testify. Indeed, our own decisions hold directly to the contrary. *State v. Porter,* 34 Iowa, 133; *State v. Tippet,* 94 Iowa, 646; *Furlong v. Carraher,* 102 Iowa, 358; *State v. Robbins,* 109 Iowa, 650. Notwithstanding the error in the rulings, we must hold that they were without prejudice, because of the fact that in every instance the testimony was made competent under the rule of the district court and the conclusions of the witnesses received.

*4. EXPERT EVIDENCE: qualification of witness.*

Instruction 5 given by the court was in the following language:

The court has allowed in this case the introduction of evidence known as expert testimony, and has allowed expert witnesses to testify as to what, in their opinion, was the cause of the death of A. C. Tillman. But, gentlemen of the jury, their opinion so expressed is not binding or conclusive upon you. It is for you to determine from all the facts and circumstances developed in this case, including the opinion of said expert witnesses, what, in fact, was the cause of the death of said Tillman? And you are to give to their opinion such weight and credit as you shall deem it entitled to after taking into consideration their knowledge and skill as disclosed in their testimony, and all the other facts and circumstances shown and developed in their testimony.

*5. EXPERT EVIDENCE: instructions.*

There was no error in giving this instruction. It an-

nounced the general rule, as we understand it, and the rule of this court. *Arndt v. Hosford,* 82 Iowa, 499; *Ætna Life Ins. Co. v. Ward,* 140 U. S. 76 (11 Sup. Ct. 720, 35 L. Ed. 371). It did not, in effect, even belittle the testimony of the physicians, but told the jury that it was not bound to treat their evidence as to the cause of death conclusive; and under the record this was true. If there had been no conflict on this question, the jury would have had no right to disregard this evidence and find independently of it. But when there is a conflict in the evidence on a given point it is the general rule that the jury is not bound to treat the testimony of any witness as conclusive, no matter whether he be an expert or a non-expert; and this is, in substance, the instruction given. In *Brush v. Smith,* 111 Iowa, 217, the trial court did in fact belittle the expert testimony by saying to the jury that it ought never to be allowed to overcome clear and well-established facts, and that it was the lowest order of evidence — an entirely different instruction from the one under consideration.

We find no prejudicial error in the sixth instruction. While it did not use the word " warranty " in dealing with the question, it announced a correct rule, and sufficiently covered the issue.

We find no error for which the judgment should be reversed, and it is therefore *affirmed.*