## C. M. Haradon v. Dr. Milton G. Sloan, Appellant.

**Physcians:** MALPRACTICE: INSTRUCTIONS: DAMAGES. In an action for malpractice the instruction that the plaintiff had the burden of proving by a preponderance of the evidence that the defendant did not treat plaintiff with medical skill and care, that such failure to exercise reasonable and ordinary skill resulted in the injury complained of, that the injury complained of was due solely to the lack of ordinary skill and care, and that plaintiff was not guilty of contributory negligence, was not objectionable as authorizing recovery without proof of damages.

**Same:** CONTRIBUTORY NEGLIGENCE: INSTRUCTIONS. Where there was no evidence whatever to authorize a finding that plaintiff in an action for malpractice was negligent, an instruction authorizing recovery if defendant did not use ordinary skill, though ignoring the question of contributory negligence, while incorrect was not prejudicial and did not require a reversal of the case.

**Same:** PHYSICIANS: MEASURE OF SKILL. The skill required of a physician or surgeon is that ordinarily exercised by the profession as a whole, and not that exercised by those of a particular locality. But in the instant case there was no evidence to show that the skill of physicians in the community was greater than that exercised by those of similar communities, and the instruction fixing the measure of skill by that exercised in the same community or neighborhood was not prejudicial.

**Evidence:** HYPOTHETICAL INQUIRIES: INSTRUCTIONS. Although the court failed to instruct that the value of expert evidence based wholly upon hypothetical inquiries depends upon the proof of the facts assumed, still in this instance the instruction was correct so far as it went, and in the absence of request for something more specific was sufficient.

*Appeal from Polk District Court.*—Hon. Hugh Brennan, Judge.

SATURDAY, NOVEMBER 16, 1912.

Suit to recover damages for malpractice. There was

a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*Wade, Dutcher & Davis,* and *Parsons & Mills,* for appellant.

*Bannister & Cox* and *R. B. Alberson,* for appellee.

SHERWIN, J.—In May, 1910, the plaintiff's left leg was broken between the ankle and knee by a heavy iron pipe that rolled onto his foot and struck his leg. Soon thereafter the appellant was called and took charge of the case. The plaintiff was taken to his home by appellant, and the necessary preliminary matters attended to that day. The next morning the appellant put the leg in a fracture box, where it remained for about two weeks, for the purpose of reducing the swelling sufficiently to permit a reduction of the break. When the leg was taken from the fracture box, the swelling was entirely gone, and the appellant then placed it in a plaster cast, where it remained undisturbed for about three weeks. The appellant then removed a part of the cast and found a discoloration of the skin, which he successfully treated. The entire cast was removed about four weeks later, or about seven weeks after the leg was broken. There is a conflict in the evidence as to whether the break was a transverse or comminuted one. The appellant testified that both tibia and fibula had a comminuted fracture, and in this he was corroborated by Dr. Huston, who assisted appellant in placing the leg in the cast. On the other hand, an X-ray examination of the break, after the cast had been removed, showed that the bones had been broken transversely, and such was the opinion of medical men who testified for the plaintiff. There was also evidence tending to show that the appellant, at the time of the injury, told the plaintiff that it was a square break, and that he told plaintiff's brother the next morning, after

placing the leg in the fracture box, that it was a "clean, straight break." When the plaintiff's leg was taken from the cast, it was crooked. It was some two inches shorter than it was before it was broken; and it is practically undisputed that the ends of the large bone, the tibia, were neither aligned nor in apposition, but were overlapped from one to two inches. Overlapping as they do, the bones cannot unite to form a good union and make a good leg. The best that nature can do under such conditions is to form what the doctors term a "fibrous union," which all agree is not as good as a union of the bones, and which the evidence tends to show makes the leg practically useless.

I. No. 1 of the court's instructions is as follows: "The burden of proof is upon the plaintiff; and in order that he may recover in this case he must prove, by a preponderance of the evidence, the following:

1. Physicians: malpractice: instructions: damages.

First. That defendant did not, with medical skill and care, properly treat plaintiff for his ailment. Second. That such failure to so treat plaintiff with reasonable and ordinary skill, as defined in these instructions, resulted in the injury complained of. Third. That said alleged injury is due to the lack of ordinary skill and care, and not otherwise. Fourth. That the plaintiff was not guilty of negligence contributing to such injury. And a failure to so establish any of these matters requires that the jury shall find a verdict for the defendant." Complaint is made of this, because it did not require the plaintiff to prove that he was damaged in any amount, but left that for the jury to infer. The complaint is without merit. The instruction did not authorize a recovery without proof of damages, and in a subsequent instruction the court fully covered the question of damages.

II. Instruction 7, given by the court, is as follows, so far as the same is material to our present discussion: "If you find from the evidence that the defendant did not use ordinary skill and diligence in the treatment of the

plaintiff's leg, and that his failure to use such skill and

2. SAME:
contributory
negligence:
instructions.

diligence resulted in the increased injury complained of, you will, in that case, find for the plaintiff." The quoted part of the instruction is assailed, because it wholly ignored the question of the plaintiff's contributory negligence, and was in conflict with instructions 1 and 5, which told the jury that plaintiff must prove that he was not guilty of contributory negligence. It was error to give the instruction under consideration. *Lauer v. Banning*, 140 Iowa, 319; *Quinn v. Railway Co.*, 107 Iowa, 711; *Thayer v. Smoky Hollow Coal Co.*, 121 Iowa, 121; *Christy v. Railway Co.*, 126 Iowa, 432.

But it does not necessarily follow that the error was prejudicial to the appellant; and, of course, if it was not there should be no reversal on account thereof. We have examined the record in this case with great care for the express purpose of ascertaining whether it contains any evidence tending, in the least, to show that the plaintiff is chargeable with any act that contributed to the injury complained of, and we have been unable to find any evidence upon which a jury or a court could predicate a finding that the plaintiff was negligent. He did not try to use this leg until urged by the appellant to do so, and then his use of it seems to have been in strict accord with appellant's instructions. The appellant himself testified that the use that plaintiff first made of his leg after the cast was removed "did not make it materially worse at all." It is apparent, therefore, that there was no question of contributory negligence to go to the jury, and that the appellant suffered no prejudice on account of this instruction.

III. There is no merit in appellant's contention that the court did not confine the jury to a consideration of the negligence charged. The instructions, read as a whole, clearly state the plaintiff's case and limit the consideration to such case.

IV. In the second instruction the court told the jury that appellant's skill was to be measured by that of "good physicians and surgeons of ordinary ability and skill practicing in similar localities," and then, in the same instruction, he said that if appellant omitted to use the "ordinary skill and diligence of his profession . . . in this locality" he might be liable. In other instructions he fixed the measure of skill by that of physicians of "this community" and in the "same neighborhood." Complaint is made of the use of these latter expressions. They are inaccurate, and did not give the jury the correct rule. *Whitesell v. Hill,* 101 Iowa, 629; *Decatur v. Simpson,* 115 Iowa, 348. But the appellant could not possibly have been prejudiced by the language used. In the first place, there is nothing in the record tending to show that the general professional skill of Des Moines is greater than that of their 'brethren in localities similar to Des Moines; and, unless such an inference can be drawn, no prejudice could result. In the second place, the setting of a broken leg, where the break is between the ankle and knee, is a simple matter, and one that does not require extraordinary skill. Every little town in the state has from one to a half dozen physicians, who are fully qualified to set fractures of this kind. See *Whitesell v. Hill, supra; Kline v. Nicholson,* 151 Iowa, 710.

3. SAME: physicians: measure of skill.

V. Instruction 7 is further criticised, because it permitted the jury to speculate as to plaintiff's future pain and suffering, and because it did not point out the elements of plaintiff's damages. Both criticisms are without merit.

VI. Appellant insists that the following part of an instruction is erroneous:

In this case a number of witnesses have been called and testified as medical experts; that is, they have given you their opinion, based upon hypothetical questions put to them. You will carefully consider this testimony and give

it the weight you think it justly entitled to, taking into
consideration the amount of skill and learn-
4. EVIDENCE: hypothetical inquiries: instructions. ing possessed by such experts; also their can-
dor or want of candor upon the witness
stand, or the interest manifested by them, if
any, in the result of the suit. But while it is proper for
you to consider this class of evidence and give it such
weight as you may think it justly entitled to, still you are
not bound to find the facts to be as they have been testified;
but you should consider their evidence and all other evi-
dence in the case, and then give it such weight and credit
as you may think it entitled to receive. The value of such
testimony depends upon the circumstances of each case, and
of these circumstances the jury must be the judge. When
expert witnesses testify to matters of fact, from personal
knowledge, then their testimony as to such facts within
their personal knowledge should be considered the same
as of any other witnesses who testify from personal knowl-
edge.

This instruction did not tell the jury that the value
of opinion evidence, based wholly on hypothetical questions,
depended upon the establishment of the facts assumed; but,
as far as the instruction went, we think it correct and in
line with the following decisions: *Spiers v. Hendershott,*
142 Iowa, 446; *Ball v. Skinner,* 134 Iowa, 298; *Morrow
v. Association,* 125 Iowa, 633; *Borland v. Walrath,* 33
Iowa, 130; *Whitaker v. Parker,* 42 Iowa, 585. If the
appellant desired further instructions, he should have asked
for them. The case was fairly covered by the court, and
nothing further can be claimed, in the absence of specific
requests.

We can not agree with the appellant's contention that
there was a total failure to show negligence on his part,
and that there should have been a directed verdict in his
favor. In our opinion, the verdict is amply supported by
the facts appearing in the record. We find no error for
which there should be a reversal, and the judgment is there-
fore—*Affirmed.*