### No. 9852.
### Orleans Appeal.

---

VIOLA BENNET, DIVORCED WIFE OF JAMES BRIDGEMAN, WIDOW BY SECOND MARRIAGE OF JOHN BONDERENT, v. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY.

(January 19, 1925, Opinion and Decree.)
(February 16, 1925, Rehearing Refused.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Insurance—Par. 33, 175.**
A beneficiary claiming under an accident policy for the loss of the insured's life, assumes the burden of proving—as the terms of the policy require—that death resulted "directly and independently of all other causes, from a bodily injury sustained while the policy was in force and which was effected accidentally." Where disease, and not bodily injuries, are shown to have been the direct cause of death, there can be no recovery.

Appeal from First City Court of New Orleans, Section "C", Hon. Henry Renshaw, Judge.

This is a suit on an accident insurance policy.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Frank S. Norman. attorney for plaintiff and appellee.

Solomon S. Goldman, attorney for defendant and appellant.

BELL, J. This is a suit for $288.75, on an accident insurance policy. The assured,

Charles Young, was found dead in his bed the evening of August 20, 1923. Plaintiff, the named beneficiary under the policy, brings this suit. There was judgment as prayed for, from which the defendant insurance company has appealed.

It is alleged in the petition that on the morning of July 23, 1923, Charles Young was descending the stairs leading from the second story of his residence, when he accidentally slipped and fell down the entire length of the stairway, sustaining severe bodily injuries, from the effects of which he died about three weeks later.

The answer admits the issuance of the policy under which plaintiff is the beneficiary and also admits the correctness of the amount claimed thereunder. All other allegations of the petition are denied, and defendant further answering avers:

"That Charles Young did not die under such circumstances as to entitle plaintiff to the amount demanded under the said policy, for your respondent shows the said policy insures against loss of life 'resulting directly and independently of all other causes from a bodily injury which is sustained while this policy is in force and which is effected accidentally', and was not the result directly and independently of all other causes of a bodily injury effected accidentally."

From the record before us it does not appear that there were any eye witnesses to the accident. The evidence is to the effect that Young was about forty-five years of age, employed at the date of the accident and for many years prior thereto by the United Fruit Company in unloading bananas from banana ships at New Orleans. From a signed statement made by plaintiff as claimant under the policy, it appears that Young quit work about August 12, 1923, which would have been some thirteen days after the date of the accident, as alleged in plaintiff's petition. It also appears from this signed statement that Young "died before consulting a physician", and

that "the deceased did not realize the severeness of his condition and died a natural death". The undertaker's certificate, furnished to and offered in evidence by the defendant, reads as follows:

"This is to certify that we buried deceased Charlie Young—who died this city, August, 1923. At time of his burial we noticed nothing abnormal and the body was in good condition. Cause of death being heart block.
    "(Signed)    Yours truly,
         Geo. D. Geddes U. & E. Co., Ltd.,
             by M. L. Kellar."

The assistant coroner who examined the body testifies that Young died of "heart block", and in the record we find the statement written and signed by this witness, which reads as follows:

    "New Orleans, March 11, 1924.
"In reference to above I will state that 'heart block' is a natural condition and not due to any external violence.
    "Respectfully,
        "(Signed)    E. J. DeBergue, M. D.,
                 "Assistant Coroner."

Despite the written declarations above quoted, we find the assistant coroner, on the trial of this case, April 30, 1924, testifying that he concluded after issuing the above certificate, and after having been given a whole day to examine the records from which it was prepared, that Young's death was due to a fall, which caused the "heart block" resulting in his death.

Dr. Charles L. Eshlemann, a recognized heart specialist and practitioner of long experience in the City of New Orleans, testifies as an expert for defendant, that "heart block" is a disease causing interference with the heart's natural and proper impulse to beat. His testimony, not qualified or varied by cross-examination, is, in part, as follows:

"Q. Now, doctor, what causes this lack of co-ordination?

"A. Disease of this bundle of fibres, such as syphillis, acute inflammatory rheumatism,. acute effects of any infection, like diphtheria or influenza or pneumonia, and in a group of cases in later years, fibre degeneration in the muscle fibres themselves.

·"Q. Now, doctor, taking a hypothetical case of a man around fifty years, apparently in good health, had been doing strenuous work, is said to have suffered a fall on the 20th day of July; for about a week after the fall he didn't work, but thereafter he went back to work, continues for about two weeks of strenuous work, carrying bundles of bananas, is found dead in bed on a certain date about three weeks after this fall, and the death is diagnosed as heart block. Would you say that the heart block in that case results from an accident occurring three weeks before, which did not interfere with the man's working two weeks before his death, or does that come from the diseased condition that you testified to?

"A. I never heard of or I have never seen a case in which an accident caused heart block. It is produced by disease. Therefore, I should say that disease in that bundle of muscle fibres caused death in that case.

"Q. Now, doctor, as a matter of fact, an injury which affects a heart so seriously that death results in three weeks, wouldn't such an injury prevent work for two weeks preceding the death, as a rule?

"A. It would.

"Q. In other words, it is very improbable that an injury could be suffered and the injured party could be able to work two weeks before his death, and then be found dead as a result of that injury to the heart?

"A. Yes, sir, that is very improbable.

"Q. This diseased condition of the muscles that you speak of is that accompanied by pain or not?

"A. Sometimes it is and sometimes it is not.

"Q. Then it is possible for a person to suffer with this diseased condition and not realize it on account of lack of pain?

"A. That's correct.

. "Q. Do heart blocks produce sudden deaths?

"A. Yes. sir.

"Q. That is the usual course, is it?

"A. Sometimes the blocking continues for a long time in a partial way and not as a complete block. In that case, the heart gradually weakens, causing a gradual death.

"Q. What is the condition of the health of the person during that period?

"A. He is confined to bed with dropsy and shortness of breath and blueness of his fingers and lips and other symptoms of heart disease."

We find from the record that the hypothetical case propounded to Dr. Eshlemann, and as herein set forth, is in consonance with the facts existing in the present case.

We are unable to agree with the learned trial judge in his appreciation of the facts of this case. Fourteen witnesses have testified in this proceeding. There are more than eighty pages of testimony concerning a claim of less than three hundred dollars. We have carefully reviewed the entire record and find nothing which justifies the conclusion of the lower court to the effect that the deceased sustained a fall of some sixteen feet or that he was unable to resume his work after the fall. No one saw or heard him fall, nor is there any evidence whatever in the record to the effect that he had to be carried or assisted to his bedroom after the fall. The allegations in the petition to this effect are wholly unsupported by any proof in the record. As we appreciate the evidence, it is plain that no serious bodily injury whatever was suffered as a result of the fall. The bruises and cuts which appear in Young's face and which healed within a week or so after the accident, seem to have been the extent of the injury. We are impressed by the fact that though Young had previously collected accident disability benefits on the policy now sued upon and upon another policy known as "industrial insurance", and though he was thoroughly familiar with the manner of making claim for such relief, and was able to work and did work, except for the week immediately following his accident, still no claim for disability was presented by him in regard to the accident which it is now claimed caused his death.

Young's friend who was living directly under him in the same house and another friend, a restaurant keeper across the street, from whom he purchased his morning coffee, and also the laborer employed alongside of him in unloading bananas, all testified to his being up and about and even at his work for some time after the accident. No doctors were ever called to assist or prescribe for the deceased during his alleged illness of three weeks, and although three of the plaintiff's witnesses testified that he was groaning and in apparent agony and was declaring his fears that he would soon die, still under all of these circumstances *no medical aid was secured by him or his friends about him.* The testimony of the three mysterious negro women not related to him and not shown to have had any reasons for calling on or administering to him during his alleged sickness, is not worthy of consideration, and the unlikelihood of their statements prevent us from giving any credence to their stories. The assistant coroner's certificate, taken with the undertaker's certificate, and considered also in the light of the expert testimony of Dr. Eshlemann, convince us that Young died a natural death and not from an accidental bodily injury resulting directly and independently of all other causes.

Plaintiff has failed to carry the burden imposed upon her by law of proving by a preponderance of evidence that death in this case was accidental. The authorities cited by counsel for plaintiff have no application to the instant case, for the reason that defendant here offers no plea in avoidance of liability upon averments such as were made in the cited cases, to the effect that some breach in the term or condition of the contract had barred recovery thereunder. Of course, in such cases it is sound law that he who pleads the breach must prove it. Here, however, the plaintiff, suing upon the contract, must prove herself, as claimant or beneficiary, to be within all the terms of the contract.

Kling vs. Masons' Fraternal Accident Assn., 104 La. 763, 29 South. 332; 1 C. J. Verbo: "Accident Insurance," Sec. 284, page 496; 73 Fed. 774.

For the reasons herein stated, we are of the opinion that the judgment appealed from should be reversed.

It is, therefore, ordered that the judgment appealed from be and the same is hereby reversed, and it is now ordered and decreed that there be judgment in favor of defendant, the National Life and Accident Insurance Company of Nashville, Tenn., and against the plaintiff, Viola Bennet, dismissing plaintiff's suit at her costs in both courts.