## SOUTHERN SURETY CO. v. JONES.
### No. 520.

Circuit Court of Appeals, Tenth Circuit.
April 11, 1932.

Paul Pinson, of Tulsa, Okl. (Allen, Underwood & Canterbury, of Tulsa, Okl., on the brief), for appellant.

Charles B. Wilson, Jr., and J. C. Cornett, both of Pawhuska, Okl., for appellee.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

The appellee sued and recovered as beneficiary in an accident policy issued to Ross Lee Jones, the insured, who died on December 24, 1929. The policy insured Ross Lee Jones against "the effects resulting exclusively of all other causes from bodily injury sustained by the Insured during the life of this policy solely through external, violent and accidental means, and which bodily injury is sustained by the Insured while driving, riding in or on an automobile." The policy further provided, "This insurance shall not cover injuries fatal or otherwise sustained by the Insured while intoxicated, or while under the influence of any intoxicant, or caused or contributed to by any bodily or mental infirmity." Five thousand dollars was named as the indemnity for death resulting within thirty days from the date of the accident.

The complaint, in usual form, alleged that insured, while driving and operating an automobile and while the policy was in force and effect, sustained a bodily injury through external, violent, and accidental means from which injury he died on the same day. The answer contained a general denial and also alleged that the injuries received by the insured were received while he was intoxicated or under the influence of intoxicants. There was a jury trial and verdict in favor of plaintiff below.

There was only one eye-witness to the accident, Mrs. Cooksey, called by defendant. She testified she lived next door to Mrs. Jones, the beneficiary; that she was standing on her front porch, heard a car coming, looked up and recognized Ross Jones, the insured. He was then about 135 feet from her turning the corner. His speed was rapid. She had driven a car for a number of years, and she thought the speed of the car as it turned the corner was thirty or thirty-five miles per hour. Mr. Jones collided with a car parked on the street. He turned the corner and drove into the back end of the car without any slackening of speed. He was approximately twenty feet from her at the time. When his car struck it rebounded and then came again. The motor was still running when he struck the second time. His mother and brother came out of the house and called to him not to do that, called his name, said "Ross, don't do that, don't do that, Ross." It was his mother who said that. They ran to the car and helped him out. They took him into the house, one on each side. She said, "During the preceding fall I had occasion to be called over to Mrs. Lottie Jones' house when Ross was drunk, entirely under the influence of liquor; really didn't know what he was doing."

His mother, as a witness in her own behalf, testified that she and the children were eating dinner about 12:30 or 12:15 when she heard a crash in front and went to the door and found Ross just sitting in the car; that he got into the house with little assistance. He sat down in the front room awhile, got up and said he would lie down, went into the bed room and lay on the bed. Dr. Gunter was called and gave him a shot in the arm. He died about 5 o'clock. The doctor was called

a few minutes after the accident. The insured's nose was bleeding. She did not examine him to see whether he was drinking. He did not drink continually. Dr. Chase was also called about 2:00 or 2:30. She did not see the accident or call, when she went out, to Ross to stop. His nose was cut, and the doctor put something on it. It did not bleed a lot. He spit up blood.

Insured's brother, Carl Jones, testified that he heard the noise when he was in the back part of the house; that he ran out and offered to assist Ross into the house, but he walked in by himself. The front end of his car was damaged, the lights and radiator caved in. He, his mother, and a younger brother went out to the car together. Ross refused assistance. He didn't talk about the collision. His mother was crying and hollering, but he does not remember what she said. Dr. Gunter came in about fifteen minutes. The foot feed would hang, and you would have to kick it or lift it up. "Ross didn't drink a good deal; he didn't drink to excess." The undertaker testified that he found the following marks of injury on the body of Ross Jones: Bad bruise on upper part of nose.

Dr. Gunter testified for the defendant that he was called to visit Ross Lee Jones on December 24, 1929. When he got there his mother, sister, wife, and brother Carl were there. He asked his mother whom she wanted him to see, and she said Ross. She said she thought Ross had had too much to drink. Nothing was said about an accident. He went in to see Ross. There was a little blood on his nose. He asked Mrs. Jones about that, and she said that he had been in an automobile wreck. He talked with Ross. He was intoxicated. He could smell whiskey on his breath. He examined Ross' body, examined his nose to see if it was broken, unbuttoned his shirt and looked at his chest. The nose was not broken. Ross was unable to talk intelligently. He couldn't stand up. The doctor could not find any indications of an injury which could have caused his condition. There was a little skin off his nose and his right chest. He gave Ross three bromides as a sedative to allay nervousness and produce rest and sleep. The occasion of his nervousness was acute alcoholism, just an ordinary drunk. His nervous system had been exhausted. He didn't want to be in bed, wanted to be going, to get up. The witness stayed a few minutes, left some bromides for him to take in an hour, and if not then relieved to call him. Ross did not discuss the accident. He was called back the second time. Ross hadn't gotten any easier. He was still in an excited nervous condition, and he gave him a hypodermic and a sedative. He said, "What I saw of his injuries couldn't possibly have caused his death." The doctor had practiced in the Jones family while he was in Barnsdall. At the time of the trial he lived in Texas. He came to the trial on a telegram with the understanding that the company would pay his reasonable expenses. He expected to charge them $25 a day and expenses. The doctor admitted on cross examination that he had made a written statement on proof of death of insured that the cause of his death was a car wreck and that deceased was not under the influence of liquor at the time of his visit; that he discovered contusions or wounds on the body.; that the nature and extent of the injury was lacerated nose and bruised chest.

Dr. Chase testified that he had practiced medicine and surgery for twenty years; that he saw the insured between 1:30 and 2:00 on the day of his death. He received a telephone call to come immediately. He went to the house of insured's mother. He went there twice. On the first visit he stayed until the insured became rather quiet. On his first visit he found the insured a raving maniac. He had delirium tremens. He saw animals facing him, horses running after him. He saw a cow standing on her hind legs with horns sticking out of her breast, and birds picking out his eyes. The witness treated him for alcoholism. The family insisted, "Can't you do something, can't you give him something to quiet him." Dr. Chase gave him two hypodermics, and finally ten grains of chloral hydrate. Ross had a cut on his nose and an abrasion on his chest, but the doctor did not discover any injury on his body which might have conceivably caused his death. He died of acute dilation of the heart which alcoholics have. The bruise on his chest and the cut on his nose were not of serious nature, and didn't require or receive any treatment. "His death in my opinion was caused by delirium tremens due to alcoholism." Dr. Chase also admitted that he signed a proof of death, and in answer to the question, what was the primary or contributing cause of death, if disease give date, or explanation, if not disease state the contributing facts which led up to the direct and primary cause, he answered: "Auto accident, alcohol." In answer to the question, what was the immediate cause of death, he said "Internal injuries, alcohol."

Mrs. Jones, the beneficiary, in rebuttal

said that after Ross entered the house she helped pull his coat and shirt off and was near enough to detect the odor of liquor on his breath, but did not detect such odor, nor did she hear her son complaining about a cow on its hind legs trying to get him, or about horses trying to run over him, nor did she pull down the shades to keep him from seeing snakes.

Two witnesses, who saw the insured a short while before the accident, said they talked with him, and that his condition seemed all right; they saw nothing wrong with him. One of them a police officer talked to him about 10 o'clock in the forenoon, and later between 11 and 12 o'clock. He testified that the insured appeared to be a well man and his condition was all right.

At the close of all the evidence the defendant requested the court to direct a verdict in its favor on several grounds: First: The death was not due to accidental causes, nor was it brought about by accidental means, nor was it an accidental death. Second: That the cause of death was not solely external, violent and accidental means, nor did the death result exclusively of all other causes from bodily injuries sustained by the insured. Third: That the injury was sustained by the insured while intoxicated or under the influence of an intoxicant. Fifth: That it was caused or contributed to by a disease or bodily or mental infirmities. Sixth: That the evidence of the plaintiff was wholly insufficient to sustain a verdict in this case.

Under the terms of the policy and the pleadings, it was incumbent upon plaintiff before she was entitled to recover to show by a preponderance of the evidence that the death of the insured resulted exclusively of all other causes from bodily injuries sustained by insured solely through external, violent and accidental means. National Masonic Acc. Ass'n v. Shryock (C. C. A.) 73 F. 774; Travelers' Insurance Company v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308; U. S. Fidelity & Guaranty Co. v. Blum (C. C. A.) 270 F. 946; Lincoln Nat. Life Ins. Co. v. Erickson (C. C. A.) 42 F.(2d) 997. Aside from the accident itself there is no testimony, facts, or circumstances adduced on the part of plaintiff which tended to show the cause of death, or that it was the result of the accident, whereas there was direct proof on the part of the defendant that insured's death did not and could not have resulted from that accident, exclusive of all other causes. Not only so, but defendant's proof went further and tended to show that insured's death was not solely due to external, violent, and accidental means, exclusive of all other causes, and that if such other causes did not result in insured's death, they contributed thereto. And so we are of opinion that the court erred in overruling defendant's motion for an instructed verdict at the close of all the testimony.

Reversed and remanded for a new trial.