# BROWNING v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

No. 5822.   Decided June 13, 1938.   (80 P. 2d 348.)

For former opinion, see 94 Utah 532, 72 P. 2d 1060.

*Hurd & Hurd,* of Salt Lake City, for appellant.

*Critchlow & Critchlow* and *Bagley, Judd, Ray & Nebeker,* all of Salt Lake City, as amici curiae.

*Harley W. Gustin* and *Edward F. Richards,* both of Salt Lake City, for respondent.

LARSON, Justice.

Defendant by petition for a rehearing assails the opinion of the court, 94 Utah 532, 72 P. 2d 1060, asserting that the court overlooked entirely the provisions of Subdivision "C" of "Additional Provisions" of the policy of insurance, and which defendant now contends are controlling, although in the briefs on original hearing they were scarcely mentioned; and also seeks a re-examination of the legal questions which it admits were discussed and considered at length in the opinion rendered. As to the matters specifically and topically discussed in the former opinion, we deem it unnecessary to enter into any discussions thereof. Counsel have advanced no new arguments nor furnished any authorities we did not fully consider when the original opinion was written. We shall, however, discuss briefly the effects of Sub-

division "C" of "Additional Provisions" of the policy, and cite a few additional reasons why the position of the court on all matters was well taken. In writing the original opinion, we fully considered the language and effect of the clause which appellant now thinks we entirely overlooked. We discussed the content and effect thereof but did not quote the language of Subdivision "C". That there may be no misunderstanding of its effect, we now quote some parts of the policy and briefly discuss them. The insurance clause reads:

"The Equitable Life Assurance Society of the United States hereby insures the person named as applicant * * * subject to the provisions, conditions and limitations herein contained, against loss resulting directly and independently of all other causes, from bodily injuries effected during the term of this policy solely through external, violent and accidental means, and against disability from disease contracted during the term of this policy, as follows:"

Then follow in eight parts the specifications of the indemnities to be paid according to the nature and extent of the injury or disability. They constitute the insuring provisions of the policy. The nature, extent and amount of the insurance provided are therein set forth, and the limits of the field covered are specified. When an insured claims a right to recover under the accident provisions of the policy, all he need do is bring himself within the field therein defined and show his injury or disability was proximately and predominantly caused *through* violent, external and accidental means. He then has brought himself within the policy, and the terms thereof have been met. He is not required to show there were no latent causes, or other conditions which might have contributed to the result, indirectly or in part. His duty is affirmative; he is not charged with the duty of negativing anything. When he brings himself within the insuring clause he has made his case—should we use that hackneyed but inapt expression, a prima facie case—and any exceptions or conditions which would then deny him relief, take him out of the indemnity provisions, render them inoperative as to him, are matters

of defense, and the burden thereof rests upon the insurer. *Vernon* v. *Iowa State Traveling Men's Ass'n,* 158 Iowa 597, 138 N. W. 696; *Jones* v. *United States Mutual Accident Ass'n,* 92 Iowa 652, 61 N. W. 485; *Carnes* v. *Iowa State Traveling Men's Ass'n,* 106 Iowa 281, 76 N. W. 683, 68 Am. St. Rep. 306. To further demonstrate the correctness of our holding that the language, "resulting directly and independently of all other causes", and "solely through external, violent and accidental means", does not bar recovery by the insured under a record such as this, we cite, out of many, the following well reasoned cases, construing the meaning and effect of similar clauses: *Wheeler* v. *Fidelity & Casualty Co.,* 298 Mo. 619, 251 S. W. 924 (a case not unlike this one); *American Bonding Co.* v. *Morrow,* 80 Ark. 49, 96 S. W. 613, 117 Am. St. Rep. 72.

"Starting with a bodily injury, all morbid changes in the exercise of vital functions or the texture of the bodily organs which result from or are induced by such injury should be regarded as the effect thereof, and not as independent causes. When death results from any such morbid change so resulting from or induced by such injury, the injury, and not the morbid change induced by it, is the cause of death. Beginning with a primary cause, conditions induced by such cause are effects thereof; and every condition so induced must be considered in relation thereto as an effect, and not as a cause." *Ward* v. *Aetna Life Ins. Co. of Hartford,* 82 Neb. 499, 118 N. W. 70, 72.

The following cases also support this position: *Fetter* v. *Fidelity & Casualty Co.,* 174 Mo. 256, 73 S. W. 592, 61 L. R. A. 459, 97 Am. St. Rep. 560; *Driskell* v. *United States Health & Accid. Ins. Co.,* 117 Mo. App. 362, 93 S. W. 880; *Continental Casualty Co.* v. *Lloyd,* 165 Ind. 52, 73 N. E. 824; *Thornton* v. *Travelers' Ins. Co.,* 116 Ga. 121, 42 S. E. 287, 94 Am. St. Rep. 99; *Modern Woodmen Accid. Ass'n* v. *Shryock,* 54 Neb. 250, 74 N. W. 607, 39 L. R. A. 826; *Freeman* v. *Mercantile Mutual Accid. Ass'n,* 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753; *Lawrence* v. *Accident Insur. Co.,* 7 Q. B. D. 216; *Leland* v. *Order of United Commercial Travelers of America,* 233 Mass. 558, 124 N. E. 517; *Fidelity &*

*Casualty Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, 44 L. R. A., N. S., 493; *Illinois Com'l Men's Ass'n* v. *Parks,* 7 Cir., 179 F. 794, 103 C. C. A. 286; *Ludwig* v. *Preferred Accid. Ins. Co.,* 113 Minn. 510, 130 N. W. 5; *Collins* v. *Casualty Co. of America,* 224 Mass. 327, 112 N. E. 634, L. R. A. 1916E, 1203; *Patterson* v. *Ocean Accid. & Guar. Corp.,* 25 App. D. C. 46; *Manufacturers' Accid. Indem. Co.* v. *Dorgan,* 6 Cir., 58 F. 945, 7 C. C. A. 581, 16 U. S. App. 290, 22 L. R. A. 620; *Western Com'l Travelers' Ass'n* v. *Smith,* 8 Cir., 85 F. 401, 29 C. C. A. 223, 56 U. S. App. 393, 40 L. R. A. 653.

Bear in mind that there are no exceptions in the insuring clause; it contains no provisions about bodily infirmities, bacterial infections, or disease, or other exceptions within the field otherwise covered by the insuring clause. Such limitations or exceptions as are set forth in the insuring clause must be met by the insured; but limitations, exceptions or conditions which may relieve the insurer from liability, which may be set forth in the policy outside of the language of the insuring clause, or which may exist outside of the policy entirely, must be made and established by the insurer to escape liability thereunder.

Referring back to the policy, after the insuring clause with its eight paragraphs as to indemnities, there is a distinct break in the policy, indicated by a space and a line drawn across the policy. Then, under a heading "Standard Provisions", are fifteen paragraphs which have nothing to do with any matters involved in this case. On the third page are eight paragraphs, numbered "A" to "G", inclusive, entitled "Additional Provisions". Subdivision "C", the one under discussion here reads:

"C. The insurance under Parts I to IV inclusive [the accident provision], shall not cover accident, injury, disability, death or other loss *caused* directly or indirectly, wholly or partly, by bodily or mental infirmity, hernia, ptomaines, bacterial infections (except pyogenic infections which shall occur with and through an accidental cut or wound), or by any other kind of disease. * * *" (Italics and bracketed expression added.)

Subdivision "A" provides, inter alia, that "disease," when used in the policy, means "sickness." In the opinion rendered, we discussed this question and held that *"disease"* means a *pre-existing disease* and not a mere bodily condition, temporary disorder, or departure from normal, not amounting to a disease or sickness within the connotation of that term in common parlance. Counsel for insurer now argues that the above quoted provision excepts from the policy any injury or loss to which any of the infirmities named *indirectly contributes.* But the insurer wrote the policy and it did not except loss to which the ailments specified *indirectly contributed,* but only those which were *caused* by such ailments. It requires no argument to show that a direct or an indirect cause is a different thing entirely from a contributing cause. And therein lies the weakness of counsel's argument, when he does, and asks us to read into the exception the words *italicized* below so to make the exception read, "caused directly or indirectly, *or contributed to,* wholly or partly, by * * * disease." An indirect cause is a cause of a cause. It is a cause which sets in operation an active cause. A cause which contributes to a result is an independent cause, not set in operation by the other cause and operating independently of it in tending to produce the result. If the second, or secondary cause, is set in motion or in operation by the primary cause, or if its operation is controlled, directed or influenced in its action or behavior, by the primary or first cause, then the second or secondary cause is not an independent cause, not a contributing cause, operating in parallel, but operates in series and is a result of the first cause.

This provision of the policy means, therefore, that there is excepted from the insurance under Parts I to IV (the accident provisions) injury or loss resulting from an accident or injury, where such *accident or injury* was caused, brought about, or induced, directly or indirectly by disease, bodily or mental infirmity, hernia, ptomaines, or bacterial infection. Thus it seeks to safeguard the

company from such cases as where one subject to fits, falling from a fit sustains an injury from the fall, or because of a delirium of fever sustains a physical injury or accident. If the accident or injury resulting in the disability or loss was produced, caused, set in motion or operation by disease or infirmity, then it is indirectly caused by such disease or infirmity and is to be regarded as the result of sickness and not of accident. But if the accident produces, causes or sets in motion or operation a disease or infirmity, the same is deemed the result of the accident and not of disease. With this distinction in mind, much of the apparent differences in the decisions vanish. *State* v. *Kruppa,* 176 Iowa 403, 158 N. W. 401. In *Thornton* v. *Travelers' Insur. Co.,* 116 Ga. 121, 42 S. E. 287, 94 Am. St. Rep. 99, it is said (page 288) :

"The policy contained a stipulation in the following language: 'This insurance shall not cover * * * accident, nor injuries, nor disability, nor death, nor loss of limb or sight, resulting wholly or partly, directly or indirectly, * * * from hernia.' * * *

"On the other hand, the insured claims that * * * the company is liable to him for the reason that he was injured as the result of an accident, within the meaning of the policy; and that the mere fact that his injuries might have been aggravated by the existence of the hernia at the time of the injury does not defeat his right to recover under the contract. * * * The question to be determined is whether the fact that the insured had at that time a hernia existing in his system would preclude him from recovering on the policy, when the effect of the injury resulting from the accident was to change the character of the complaint from which he was suffering from that of a *reducible* hernia, which seems not be necessarily a serious nature, to that of a strangulated hernia, which seems to be in some cases of a dangerous, and in all cases of a serious, nature. It seems to us that the test to be applied in order to determine whether there is a liability under the contract is whether the condition of the insured in having, at the time of the accident, a reducible hernia, contributed to the accident in whole or in part, directly or indirectly. If it did contribute, the company would not be liable. But if the existence of the hernia in the system of the insured at the time of the accident did not substantially contribute, wholly or partly, directly or indirectly, in bringing about the injury, but merely aggravated the consequences of the accident, then the plaintiff would be entitled to recover. * * * See 1 Cyc. Law & Pro. 263; 1 Am. & Eng. Ency. of Law, 2d Ed., 318,

note 1; 3 Joyce Ins., § 2833; Nibl. Acc. Ins. 2d Ed., § 396; *National Ben. Ass'n* v. *Grauman*, 107 Ind. 288, 7 N. E. 233. In construing a policy of life insurance, that interpretation is to be placed upon the words of the policy which is most favorable to the insured, and all ambiguities and doubts are to be resolved in favor of a liability against the insurer. *Massachusetts Ben. Ass'n* v. *Robinson*, 104 Ga. 256 (2), 30 S. E. 918, 42 L. R. A. 261; *Warwick* v. *Knights of Damon*, 107 Ga. [115], 121, 32 S. E. 951. And especially is this rule of construction to be adhered to and applied in cases where the insured has prima facie established a right to recover under the terms of the policy, and the company is seeking to defeat such a liability by showing that the act complained of is within one of the exceptions reserved in the contract as a defense to an action on the policy. All such exceptions are to be construed strictly against the company, and liberally in favor of the insured."

*Atlanta Accident Ass'n* v. *Alexander*, 104 Ga. 709, 30 S. E. 939, 42 L. R. A. 188; 1 Am. & Eng. Encyc. of Law, 2d Ed. 315 et seq.; *Western Com'l Travelers' Ass'n* v. *Smith*, 8 Cir., 85 F. 401, 56 U. S. App. 393, 40 L. R. A. 653; *Travelers' Ins. Co.* v. *Melick*, 8 Cir., 65 F. 178, 186, 12 C. C. A. 544, 552, 27 U. S. App. 547, 560, 27 L. R. A. 629; *Union Pac. Ry. Co.* v. *Callaghan*, 8 Cir., 56 F. 988, 994, 6 C. C. A. 205, 210, 12 U. S. App. 541, 550; *Milwaukee, etc., P. Ry. Co.* v. *Kellogg*, 94 U. S. 469, 475, 24 L. Ed. 256; *National Masonic Accid. Ass'n* v. *Shryock*, 8 Cir., 73 F. 774, 20 C. C. A. 3, 5, 36 U. S. App. 658; *American National Ins. Co.* v. *Ewing*, 30 Ga. App. 125, 116 S. E. 921; *Finucane* v. *Standard Accid. Ins. Co.*, 184 N. Y. App. Div. 280, 171 N. Y. S. 1018; *New Amsterdam Casualty Co.* v. *Shields*, 6 Cir., 155 F. 54, 85 C. C. A. 122; Bacon on Benefit Societies and Life Insurance, 3d Ed., Vol II, p. 1225; *Johnson* v. *Continental Casualty Co.*, 122 Mo. App. 369, 99 S. W. 473, a case where traumatic pneumonia followed a fall; *Kenny* v. *Bankers' Accid. Ins. Co.*, 136 Iowa 140, 113 N. W. 566, 37 Law Ins. Jour. 59, a case where traumatic neuritis followed an injury; *Re Etherington and Lancashire and Yorkshire Accid. Ins. Co.*, [1909] 1 K. B. 591; *Travelers' Ins. Co.* v. *Hunter*, 30 Tex. Civ. App. 489, 70 S. W. 798, a case where insured was accidentally injured and died, the insurer claim-

ing death was due to rheumatism, claiming that insured had a running sore on his arm, eczema, and a tendency to rheumatism, having previously suffered from it; *Ludwig* v. *Preferred Accid. Ins. Co.*, 113 Minn. 510, 130 N. W. 5, a case where appendicitis developed from an injury; *Fairclough* v. *Fidelity & Cas. Co. of N. Y.*, 54 App. D. C. 286, 297 F. 681, a case where insured fell in a fit of vertigo, was injured and died. A directed verdict for defendant company was reversed. What then constitutes disease or bodily infirmity or bacterial infections within the meaning of exclusion or exception clauses in accident insurance policies? "Disease" by the terms of this policy is synonymous with "sickness." *Logan* v. *Provident Sav. Life Assur. Soc. of N. Y.*, 57 W. Va. 384, 50 S. E. 529; *Cady* v. *Fidelity & Casualty Co.*, 134 Wis. 322, 113 N. W. 967, 17 L. R. A., N. S. 260; *Wheeler* v. *Fidelity & Casualty Co. of N. Y.*, supra; *Collins* v. *Casualty Co. of America*, supra; *Leland* v. *Order of United Com'l Travelers of America*, supra; *Fidelity & Casualty Co.* v. *Meyer*, supra; *Thornton* v. *Travelers' Insur. Co.*, supra; *Ludwig* v. *Preferred Accid. Ins. Co. of N. Y.*, supra; *American Accid. Co.* v. *Reigart*, 92 Ky. 142, 17 S. W. 280, 21 L. R. A. 651.

We have again read the record through a number of times to see if there was any evidence that the insured was suffering from disease, bodily infirmity or bacterial infection, within the meaning of such terms, when used in exception clauses of accident insurance policies such as this, and we unhesitatingly say that there is no evidence to that effect. But this question was for the trier of the facts and it found against the company. This being a law case, and the facts having been found in favor of the insured, we are not permitted to disturb such findings. There is ample evidence to support them. If the facts were to be determined by this court, we would not hesitate in finding them to the same effect as did the trial court. That such matters are questions of fact and the findings of the trial court are correct and binding are amply sup-

ported by the authorities. *Kenny* v. *Bankers' Accid. Ins. Co. of Des Moines,* supra; *Martin* v. *Equitable Acc. Ass'n,* 61 Hun 467, 16 N. Y. S. 279; *Martin* v. *Manufacturers' Accid. Indem. Co.,* 60 Hun 535, 15 N. Y. S. 309; *Morrow* v. *National Masonic Accid. Ass'n,* 125 Iowa 633, 101 N. W. 468, supra; *Travelers' Ins. Co.* v. *Melick,* 8 Cir., 65 F. 178, 12 C. C. A. 544, 27 U. S. App. 547, 27 L. R. A. 629, 24 Ins. Law Rep. 430; *Merrick* v. *Travelers' Ins. Co.,* Mo. App., 189 S. W. 392, 49 Ins. Law Jour. 103; *Hanley* v. *Fidelity & Cas. Co.,* 180 Iowa 805, 161 N. W. 114, 49 Ins. Law Jour. 350; *Hatfield* v. *Iowa State Traveling Men's Ass'n,* 180 Iowa 39, 161 N. W. 123, 49 Ins. Law Jour. 367; *Hanley* v. *Travelers' Protective Ass'n,* Iowa, 161 N. W. 125; *Young* v. *Continental Casualty Co.,* 128 S. C. 168, 122 S. E. 577.

We find no reason for changing from the views in the opinion heretofore rendered. The Petition for a Rehearing is denied.

HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (dissenting).

I dissent. In the former opinion in this case, I considered the effect of the words contained in the policy, reading "against loss resulting directly and independently of all other causes." I thought then and I still think that these words must by their plain and inevitable meaning exclude liability for any disability where either (1) the sole cause was other than the injury or (2) the preponderating cause of disability was any *other* cause than the injury effected solely through external, violent and accidental means, or (3) where there was an *efficient* concurring cause besides the injury and such concurring cause was not produced or set into motion by the accident or injury. I left open the questions of what the decision should be in the case where the accident or injury set in motion a pre-existing disease, infirmity or condition as not being in this case. I think it unnecessary to say here anything about such case or the case where

the accident actually produces a disease or infirmity which then becomes a concurring or, if it better pleases, a more direct cause of the disability. Personally, I have little doubt as to the liability of the insurance company in the latter case.

I think I can say confidently that the overwhelming majority of the cases cited by Mr. Justice LARSON may be resolved by applying the above tests to determine what is an independent cause within the meaning of the quoted clause. As stated in my former opinion, cases may be found to support almost any thesis and nothing is gained by picking out of a great number of cases some anomolous decision or some excerpts which seem to support one's position. What should be done is carefully to consider the language, endeavor to understand its intent and purpose and by a discerning review of the cases, in order to see how other minds viewed the meaning of the language, arrive at a rule of construction which fairly reflects the contract, giving the benefit of all doubts to the insured. In my former opinion I attempted to set off some categories which would show those types of cases which fitted the above two tests and those which might not. I see no reason for again going over that ground. There is no doubt that a depleted person, a person deprived of his normal power of resistance, who, being injured, suffers disability or death because he is that type of man who cannot resist, is not precluded from recovery simply because his system did not have the resistance powers. No one contended otherwise. The language of *Driskell* v. *United States Health & Accid. Ins. Co.*, 117 Mo. App. 362, at page 369, 93 S. W. 880, at page 882, is here very apt:

"In such case, disease and low vitality do not rise to the dignity of *concurring* causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury."

This is but another way of saying that such condition was not an efficient concurring or a predominating cause;

that it was not active but negative in its effect. The facts in this case show unquestionably that there was a condition in Dr. Browning's body which was not caused by the injury but which was pre-existing and which after the slight sprain to the finger became the active, efficient cause of the disability. I care not whether this condition is called a disease, a sickness, a bacterial infection, a toxemia, or what not. The plain, unchallengeable, inevitable and sole conclusion to be drawn from the evidence is that some active, efficient agency, independent of the injury and not caused by it, took hold of the part affected by the sprain and continued the disability after the effects of the sprain itself would have disappeared and did so, not after that period as a concurring or predominating cause, but as the sole cause. It was not the case of a failure to recuperate from a sprain because of lack of resistance. It was not lack of vitality as the passive ally of the sprain which caused the continued disability, but an active, independent, virile agency which was not created, produced or caused by the injury but which beset independently the part affected by the injury. The injury may have been the occasion but not the cause of this attack by toxemia.

I assert that with the possible exception of *Isitt* v. *Railway Passengers Assur. Co.*, 22 Q. B. Div. 504, not a single case cited in the majority opinion, when critically analyzed, holds that in a case such as this the insurance company is liable. Neither the language nor the holding of any case cited in the majority opinion can be construed to impose liability on the insurer where the injury set the condition and some active agency existing before the injury and not set in motion by it attacked the condition caused by the injury and caused or prolonged the disability. The very quotation contained in the majority opinion taken from *Ward* v. *Aetna Life Ins. Co. of Hartford*, 82 Neb. 499, 118 N. W. 70, significant of many of the cases cited in that opinion, covers a case other than here exists and illustrates the futility of citing excerpts or cases where the situations are unlike that of the instant case. It reads (page 72) :

"Starting with a bodily injury, all morbid changes in the exercise of vital functions or the texture of the bodily organs *which result from* or are *induced by such injury* should be regarded as the effect thereof, and not as independent causes. When death results from any such morbid change so resulting from or induced by such injury, the injury, and not the morbid change induced by it, is the cause of death. Beginning with a primary cause, conditions induced by such cause are effects thereof; and every condition so induced must be considered in relation thereto as an effect, and not as a cause." (Italics added.)

Can it be said that the arthritis caused by the toxemia, which it is admitted was not caused by the sprain, was a "result from" the injury or that it was "induced by the injury"? As stated in my former opinion, the evidence is clear that it was not caused by the injury, did not cause the injury, nor was it induced by the injury. It was not pushed, moved or pulled or in any way created, produced or caused by the sprain. It existed in the bloodstream and settled at this place because in all probability the sprain lowered the resistance.

In this case it was not lowered resistance which was the passive ally in permitting the injury to produce effects which would otherwise not have been produced by the injury. In this case the injury produced no effect except the sprain. The decision confuses those cases involving lowered vitality which does not present the resistance required to prevent the injury from running a course which otherwise would not have ensued and those cases where, due to a lowered vitality due to the injury, an active, efficient agency independent of the injury beset the injured part or the patient generally, and aggravated or extended the disability beyond that chargeable alone to the injury. There are numerous cases where the injury through a chain of cause and effect concludes in a certain condition of part or body which would not have run that course if there had not been devitalization, but I know of no case, nor has the majority opinion cited one, where the reverse is held, to wit, that where the injury devitalizes and because of such devitaliza-

tion another active, independent and efficient agency already existing in the body takes advantage of such condition caused by the injury and produces the disability or prolongs it, that it, the injury, is still held to be the sole cause "directly and independently of all other causes."

I now come to Subdivision "C" which was not by me considered in the other opinion. I had no doubt but that the clause, "Loss resulting directly and independently of all other causes," was sufficient to exclude liability in this case. But I frankly admit that I did not consider Subdivision "C." Mine was, in respect to the point herein considered, the minority opinion, so there may be some extenuation for overlooking its significance, especially since I was satisfied that the other clause excluded liability and in view of the fact that counsel, evidently being assured of prevailing on still other points, did not emphasize it in their briefs. But Mr. Justice LARSON says he did, before writing his former opinion, fully consider it although he did not mention it. I consider it not only worthwhile mentioning, but quite conclusive of this whole matter. I think it is but an emphasized special enunciation of the more general clause reading, "resulting directly and independently of all other causes." Because I shall, in view of Mr. Justice LARSON'S opinion, want to analyze it in connection with a critical analysis of his opinion, I set it out here. It reads:

"C. *The insurance under Parts I to IV inclusive* [the accident provision], *shall not* cover accident, injury, *disability*, death or other loss *caused directly or indirectly, wholly or partly, by* bodily or mental infirmity, hernia, ptomaines, *bacterial infections* (except pyogenic infections which shall occur with and through an accidental cut or wound), or by any other kind of disease * * *." (Italics added.)

I have italicized all the parts which affect this case. The section may be read for purposes of this case as if it consisted of only the italicized part. And how does the majority opinion circumvent the plain language of this clause? I confess I do not know. I have read that opinion several times,

yet I am unable to discover any clearcut explanation. The opinion first states:

"When an insured claims a right to recover under the accident provisions of the policy, all he need do is bring himself within the field therein defined and show his injury or disability was proximately and predominantly caused through violent, external and accidental means. He then has brought himself within the policy, and the terms thereof have been met. He is not required to show there was no latent causes, or other conditions which might have contributed to the result, indirectly or in part. His duty is affirmative; he is not charged with the duty of negativing anything."

In the first place, I doubt whether this is an accurate statement of the law. I think its significance such that it should be fully considered by this court before we give approval to it. The general liability provisions of this policy make the insurer liable only for "loss resulting directly and independently of all other causes from injuries," etc. And it appears it must show by evidence facts from which it may be reasonably inferred that the death or disability was independent of all other causes than the accident.

In *Ryan* v. *Continental Casualty Co.*, 5 Cir., 47 F. 2d 472, it was held that the burden was on plaintiff to prove that the death resulted from a bodily injury which was effected solely and independently of all other bodily causes by the happening of an external, violent and purely accidental event. This does not mean that it must be proved absolutely, but that the evidence must have "a substantial tendency to prove that what accidentally happened was the sole cause of * * * the death." (page 473.)

In *Layton* v. *Metropolitan Life Ins. Co.*, Mo. App., 89 S. W. 2d 576, the lower court instructed the jury (page 578):

"* * * that the burden of proving that myocarditis was the sole cause or the contributing cause of the death of the insured was on the defendant, and that if the defendant failed to carry such burden, or if the evidence thereon was evenly balanced, then a verdict 'must' not be found against the plaintiff 'on any theory that myocarditis either caused or contributed to' the death of the insured."

The plaintiff argued that the instruction was proper for the reason that the defendant relied upon an exception in each of the riders as follows:

" 'No accidental death benefit will be paid * * * if death is caused or contributed to, directly or indirectly, or wholly or partially, by disease or by bodily or mental infirmity. * * *' "

The plaintiff invoked the rule that:

"'* * * 'when an insurance company pleads an exception provided in the policy, and relies upon it as a defense, it is an affirmative defense, and as in all other pleas of affirmative defense, the burden of proof is on the defendant to sustain it.' *Turner* v. *National Benev. Soc.*, 224 Mo. App. 463, 28 S. W. 2d 125, 126."

The court held:

"In the case at bar, the cause of death was the sole question in controversy. Under the rule enunciated in the Phillips Case, supra [ (*Phillips* v. *Travelers' Ins. Co.*), 288 Mo. 175, 231 S. W. 947], the burden was on plaintiff to show that heat prostration was the cause of death, directly and independently of all other causes. If plaintiff well carried that burden, she disproved that death resulted from any disease. The rule invoked by plaintiff would apply were it undisputed that the defendant was liable in the absence of evidence showing that death resulted from an excepted cause. The rule is not applicable to the facts in this case for the reason that the cause of death was the sole question of fact in dispute; and on that question the burden was on plaintiff to prove her pleaded case, and the burden was not upon the defendant to disprove any part of plaintiff's case.

"The instruction was erroneous and, for that reason, the judgment is reversed and the cause remanded."

I have quoted at length from this case because it correctly defines the burden of insured and insurer. The insured, where his recovery depends on showing the accident to be the sole cause or the cause independent of all other causes, must carry that burden and make such a case as will tend substantially to prove that situation. But when the insurer pleads that a certain pre-existing disease or condition, such as cancer, tuberculosis, myocarditis, caused the death, it has the burden under the exception clause to show that such

specific disease or condition contributed to or caused the death or disability.

I know of no such rule that "all he need do is bring himself within the field therein defined, and show his injury or disability was proximately and *predominantly* caused *through* violent, external and accidental means." No cases are cited in support of the rule. It seems to me this statement of the rule as to burden of proof clearly illustrates the error into which the majority opinion has fallen. See, also, *Campbell* v. *Aetna Life Ins. Co.*, 283 Mo. 63, 222 S. W. 778, construing the law in force in California. The case of *Harrison* v. *New York Life Ins. Co.*, 6 Cir., 1935, 78 F. 2d 421, probably goes further than I think necessary to impose the burden on plaintiff, but certainly it repudiates the rule laid down in the majority opinion as to proof. The syllabus in that case supported by the text reads:

"In actions for accidental death benefits under life and accident policies, where insured was killed in fall from window, burden *held* properly placed on plaintiffs to prove not only the accident and that death was solely effected thereby independently of all other causes, but also that accident was not brought about by physical or mental infirmity, illness, or disease, where such causes were excepted from coverage of policy." *Brandeis* v. *Metropolitan Life Ins. Co.*, 116 Pa. Super 558, 176 A. 789. See Encyc. Insur. Law, Couch, Vol. 8, Sec. 2102, at p. 6811, Sec. 2110 at pp. 6833, 6834, 6836.

This same author states in Sec. 2239 at p. 7289:

"In an action upon a policy insuring against injury or death resulting solely from bodily injuries caused by accident or external, violent, and accidental means, and independent of all other causes, the burden of proof is upon those who claim under the policy to show that the injuries or death were solely the result of the accident, or were caused by accidental means, independently of all other causes; that is, that it was within the coverage clauses of the policy; * * *"

The author further states in Sec. 2239 at p. 7293:

"And what seems to be the true rule, according to the Vermont supreme court, is that the plaintiff must bring his case within the general liability provisions of the policy, and that, where the insurer

seeks to be relieved from liability on the ground that the injury falls within a specific exception to its general liability, it has the burden of proving facts rendering such exception applicable; * * *"

Therefore, the law seems to be as stated in the Layton Case and not as contained in the majority opinion. See, also, *Kellner* v. *Travelers' Ins Co.*, 180 Cal. 326, 181 P. 61; *Ogilvie* v. *Aetna Life Ins. Co.*, 189 Cal. 406, 413, 209 P. 26, 26 A. L. R. 116; *Fairclough* v. *Fidelity & Casualty Co.*, 54 App. D. C. 286, 297 F. 681; *Michener* v. *Fidelity & Casualty Co.*, 200 Iowa 476, 203 N. W. 14; *Campbell* v. *Aetna Life Ins. Co.*, 283 Mo. 63, 70, 222 S. W. 778; *Phillips* v. *Travelers' Ins. Co.*, 288 Mo. 175, 183, 231 S. W. 947; *Armstrong* v. *Travelers' Ins. Co.*, 4 Ohio App. 46; *Ryan* v. *Continental Casualty Co.*, 5 Cir., 47 F. 2d 472; *Brown* v. *Maryland Casualty Co.*, 8 Cir., 55 F. 2d 159; *Harrison* v. *New York Life Ins. Co.*, 6 Cir., 78 F. 2d 421; *Southern Surety Co.* v. *Jones*, 10 Cir., 57 F. 2d 851; *Metropolitan Life Ins. Co.* v. *Halsey*, 230 Ala. 193, 160 So. 248; *Mutual Benefit Health & Accid. Co.* v. *Basham*, 191 Ark. 679, 688, 87 S. W. 2d 583; *Provident Life & Acc. Ins. Co.* v. *Spurlock*, 242 Ky. 396, 46 S. W. 2d 512; *National Life & Acc. Ins. Co.* v. *Kendall*, 248 Ky. 768, 778, 779, 59 S. W. 2d 1009; *Provident Life & Acc. Ins. Co.* v. *Diehlman*, 259 Ky. 320, 326, 82 S. W. 2d 350; *Bennett* v. *National Life & Acc. Ins. Co.*, 1 La. App. 509; *Sanborn* v. *Income Guaranty Co.*, 244 Mich. 99, 104, 221 N. W. 162; *Muller* v. *Mutual Benefit Health & Acc. Co.*, 228 Mo. App. 492, 503, 68 S. W. 2d 873; *McMartin* v. *Fidelity & Casualty Co.*, 264 N. Y. 220, 190 N. E. 414; *Federal Life Ins. Co.* v. *Firestone*, 159 Okl. 228, 231, 15 P. 2d 141; *Lubowicki* v. *Metropolitan Life Ins. Co.*, 114 Pa. Super. 596, 174 A. 649; *Silva* v. *Peerless Casualty Co.*, 53 R. I. 218, 165 A. 449; *Bell* v. *Travelers' Ins. Co.*, 18 Tenn. App. 552, 557, 79 S. W. 2d 824; *Lincoln National Life Ins. Co.* v. *Erickson*, 8 Cir., 42 F. 2d 997; *Travelers' Ins. Co.* v. *McConkey*, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308; *Abbott* v. *Prudential Ins. Co.*, N. H., 195 A. 413; *Worley* v. *International Travelers Assurance Co.*, Tex. Civ. App., 110 S. W. 2d 1202.

I have gone into the question of burden of proof because the majority opinion laid down a rule without sufficiently considering it, but I see no reason for setting out in this case a rule of proof. However, whether the burden is on plaintiff or defendant to prove that the disability was caused by some efficient, active, co-operating, or some other sole or predominating cause, I think that burden has been met by the defendant. And granted that it is the duty of defendant to show that the continued disability was caused directly or indirectly by a bacterial infection, I think that duty has not only been met but that under the evidence no other conclusion is permissible. I shall later, when I comment on the view of the evidence taken in the majority opinion, endeavor to make that plain. Meanwhile, I shall continue with my analysis of that opinion. After casting the burden on defendant to negative any cause of the disability other than the injury and specifically requiring it to show that the continuance of the disability was caused by bacterial infections, the opinion proceeds to conclude that such burden has not been met. But desperate as is the reasoning to accomplish this purpose, I do not think it has been accomplished. The writer of the opinion is compelled to draw a distinction between those disabilities which were caused by ailments or infirmities and those in which the disabilities were "contributed to." The opinion says, in effect, an ailment which contributes to a disability does not cause it. In the words of the opinion, it is stated:

"It requires no argument to show that a direct or an *indirect* cause is a different thing entirely from a contributing cause."

So! I admit that indirect is oftentimes used in place of mediate or remote, and direct in the sense of immediate, but the very idea of "indirect" relates to some factor which comes in collaterally and "contributes" its effects to another causation chain and by that contribution effects a result different from the effect which would have been produced had the causation chain thus contributed to been al-

lowed to proceed to its final effect through the "direct" and successive links of cause and effect, uninfluenced by this "indirect" or contributing factor.

When a child stands forty bricks in a column, each on end and a few inches apart, and pushes the first one which, through the successive bricks toppling over, upsets the fortieth brick, the pushing over of the first brick as effectively causes the fall of the fortieth brick as if the child had put his hand upon it and pushed it over. And the pushing of the first brick may be said to be the direct although not the immediate cause or it may be said to be the indirect cause. But, certainly, if a companion child had set a column of bricks which converged with the other column at the twentieth brick and the first brick in both columns had been pushed down at exactly the right moment to permit the twentieth brick of the first column to be simultaneously struck by the preceding brick of both columns, the fall of the fortieth brick might be ascribed to the effect of the other child's column as an indirect or contributing cause.

Webster's New International Dictionary, 2d Ed., defines "indirect" as follows:

"Not direct, not straight or rectilinear; deviating from a direct line or course; circuitous, oblique; not leading to an aim or result by the plainest course or method or by obvious means; roundabout, as, an indirect accusation or answer; indirect proof; not resulting directly from an act or cause but more or less remotely connected with or growing out of it as indirect results; devious, roundabout."

In view of such a definition, is the opinion correct when it limits the definition of an "indirect cause" as "a cause of a cause," when it states that it is a cause which sets in operation an active cause, and that a cause which contributes to a result is an independent cause, "not set in operation by the other cause and operating independently of it in tending to produce the result"? But one chain of causation which converges on another chain at some point and influences or controls or diverts the path of the first

chain after the point at which the two converge, is not only a contributing cause but an indirect cause of the resultant and final effect of all of the causes, and such contributing cause does not operate in parallel. After it converges on the other chain it is then operating in series.

A striking illustration of a contributing or indirect cause is the case where some person leaves a ladder leaning up against the side of a building not far from the street from which the alley way enters. A careless truck driver, having a right to use the alley, knocks over the ladder. The upper end, reaching beyond the entrance of the alley way to the sidewalk of the main street, in its fall hits a pedestrian. The person who left the ladder in that position was guilty of negligence. But the negligence was static—a condition ready to be acted on by the dynamic negligence of the truck driver. Certainly, the "indirect" cause of the injury to the pedestrian was the leaving of the ladder in that position. The direct cause was the driver's negligence. But both were contributing causes to the final effect. But either was a cause independent of the other. The illustration is exactly this case. The sprain was the ladder in position ready for an active agency to attack it. The toxemia was the truck which operated on a condition brought about entirely independently of the toxemia. But both were contributing causes, and each was independent of the other.

I think the above illustrations will show the highly speculative and even metaphysical field we enter when we try to give definitions of "indirect" and "contributing" in the phenomenon of causation. I think unless the matter is thoroughly considered, we should not lay down definitions which may give trouble in every negligence case hereafter merely to arrive at a result which I cannot but believe has been arrived at through rationalization rather than reasoning. For the majority opinion sets much store by its discovery that Subdivision "C" did not read, "caused directly or indirectly, *or contributed to*, wholly or partly, by * * * disease." (I should say "bacterial infections.") As nearly

as I can understand the opinion, it reasons that the infirmity or whatever bacterial infection or sickness existed in the body before the sprain did not indirectly cause but "contributed to" the disability and, hence, since "contributed to" was not included in the language of the paragraph, it did not cover this case.

We should give the language the plain meaning which it conveys and not attempt to read out of the content of meaning of a word, some part of the meaning which is implicit in it and thus attempt to support an untenable position. If the majority opinion is dependent on the omission of the word "contribute" on the theory that the bacterial infection did not "indirectly" cause the disability but only contributed to it, I think it quite hard put to escape from the plain facts of this case. The true fact is that the toxemia was caused by bacterial infection either directly or indirectly and the toxemia then directly and *independently* of the accident affected a part, the resistance of which was lowered by the accident. This very plain and simple statement itself involves the idea that the disability was not caused solely by the accident but must have come about by causes independently of the accident. I think I need not further labor this point in order to reveal the speciousness of that argument. As I stated before, it appears to me that the majority opinion is driven to desperate means to uphold an opinion I think undeniably wrong. But one of the queer quirks of that opinion is that it approvingly cites language from the case of *Thornton* v. *Travelers' Ins. Co.*, 116 Ga. 121, 42 S. E. 287, 94 Am. St. Rep. 99, which recognizes that "indirectly caused" includes "contributed to." This case considers the following provision (page 288) :

"This insurance shall not cover * * * accident, nor injuries, nor disability, nor death, nor loss of limb or sight, resulting wholly or partly, *directly or indirectly*, * * * from hernia." (Italics added.)

The very language of the case then reads, in part, as follows:

"It seems to us that the test to be applied in order to determine whether there is a liability under the contract is whether the condition of the insured in having, at the time of the accident, a reducible hernia, *contributed to the accident in whole or in part*, directly or indirectly. If it did *contribute*, the company would not be liable." (Italics added.)

It would appear that the court in that case had no hesitancy in using the words "contribute to" even though no such words were used in the policy. Furthermore, I shall later endeavor to show that the disability in the case at bar was "indirectly caused" according to the very definition laid down in the majority opinion.

The opinion takes another rather queer turn. It suddenly discovers that Subdivision "C" of the policy means

"* * * that there is excepted from the insurance under Parts I to IV (the accident provisions), injury or loss resulting from an accident or injury, where such *accident or injury* was caused, brought about, or induced, directly or indirectly by disease, bodily or mental infirmity, hernia, ptomaines, or bacterial infection. Thus it seeks to safeguard the company from such cases as where one subject to fits, falling from a fit sustains an injury from the fall, or because of a delirium of fever sustains a physical injury or accident. If the accident or injury resulting in the disability or loss was produced, caused, set in motion or operation by disease or infirmity, then it is indirectly caused by such disease or infirmity and is to be regarded as the result of sickness and not of accident. But if the accident produces, causes or sets in motion or operation a disease or infirmity, the same is deemed the result of the accident and not of disease. With this distinction in mind, much of the apparent differences in the decisions vanish."

This is indeed a surprise and appears to me to concede too much to the insurance companies for the sake of a present minor victory over them. That question is not involved in this case. One might hazard a guess that the causal chain for purposes of fixing liability starts from the point of injury, but that not being in this case, the question should be entirely reserved. I can see that a creditable argument might be made that, as far as the *cause of the injury* is con-

cerned the insurance company takes the man "as is" even though the insured may, by reason of his infirmity, like a one-legged man, be more amenable to accident.

The above explanation of the efficacy of Subdivision "C" is evidently arrived at by the simple expedient of excluding the word "disability" and considering the subdivision as if it contained only the words accident and injury. By this means the provision which sets out that the insurance features should not cover a "disability" caused directly or indirectly, wholly or partly, by bodily or mental infirmity, etc., is apparently converted into one whereby it only exempts the insurer from cases where the accident was caused by bodily or mental infirmity or, indeed, by bacterial infection. It is rather difficult to visualize an accident caused by bacterial infection unless, perchance, we trace the chain of causation to its more remote origin.

In none of the decisions that I have read do "the apparent differences in the decisions" vanish by the legerdemain of dropping out of the provision one very important word and treating the clause as if such word were absent. It is true that cases have held that this clause does exempt the insurance company from liability where the accident has been caused by a mental, or bodily infirmity, etc., but not one case so far as I know has held that it is limited to such construction when the word "disability" was included.

The opinion says that if the above construction of Subdivision "C" is adopted "much of the apparent differences in the decisions vanish." I suppose this really means that opinions apparently contrary may be differentiated and reconciled by separating those in which the accident was an effect of a bodily or mental infirmity from those in which an infirmity or disease was caused, produced or set in motion by the accident. Certainly, these two fact situations are distinguishable, but under neither category does the present case fall. The sprain was not caused by the toxemia nor the toxemia by the sprain. There can be no doubt of that. Counsel for plaintiff admitted that there was no claim that

the accident caused the toxemia. It is just in this respect that I fear the majority opinion fails to comprehend the difference between this case and the many which it has cited. This case does not come under the category of accidents or injuries produced by disease or infirmity nor under the category of those where the accident "produces, causes or sets in motion or operation a disease or infirmity." In this case a pre-existing condition—call it disease, infirmity, toxemia, bacterial infection, bodily condition, or what you will—independently, of its own force, actively and efficiently alighted or settled or attacked a part already prepared for it by the accident. Such is not a case of the accident causing or producing it. Such is a true case of causes hooked up in parallel and not in series, a figure of speech used by me in my former opinion but apparently misunderstood in the majority opinion on the petition for a rehearing.

The opinion states, "We unhesitatingly say" that there is no evidence that insured was suffering from a bacterial infection "within the meaning of such terms, when used in exception clauses of accident insurance policies such as this." The opinion does not enlighten us as to what meaning the term "bacterial infection" has when used in the exception clauses. Nothing appears in the evidence as to any different meaning of the term "bacterial infections" as used in the exception clause than would be given it generally by the medical profession or indeed in common parlance. If we venture the guess that the writer of the majority opinion intends to escape from the effect of Subdivision "C" by claiming that the evidence showed not a bacterial infection but toxemia and that toxemia is not a bacterial infection, he is "hoisted with the petard," for the toxemia which existed in Dr. Browning's system was caused directly or indirectly (according to the definition of "indirectly" contained in the prevailing opinion) by bacterial infections and thus comes under the specific words of Subdivision "C."

The writer of this opinion stated in the original opinion in the statement of facts, that the evidence permitted of but

one conclusion and that was that "the toxic condition of the body was the factor which prolonged the impairment of the use of the finger." The writer of the present majority opinion in his then opinion appeared specifically to accept such as a fact but founded his opinion on the proposition that the sprain was nevertheless the cause of the disability independent of other causes. The whole argument, it seems to me, was made on that basis. There now seems to be a shifting of position. The present opinion holds that there is no evidence of bacterial infection "when used in exception clauses of accident policies such as this." As before stated, the majority opinion gives us no hint of what constitutes bacterial infection as used in such an exception clause, nor does it give us any authority on which the writer bases his opinion. If he differentiates toxemia, as used by the doctors, from bacterial infection, the answer appears plain that it was testified to by the doctors—especially Spencer who treated Browning for his tonsils—that there was infection in Browning's system. Whether this infection was bacterial or whether the toxemia came from the bacterial infection would seem to make no difference. The clause provides that there shall be an exemption for loss caused directly or *indirectly* by bacterial infections. Certainly, under the definition of "indirectly" given in the majority opinion, and disability caused by toxemia must be indirectly caused by the cause of toxemia which is bacterial infection and, thus, come unequivocally under the exemptions of the policy.

I think the majority opinion reveals that it reaches its result by a combination of untenable refinements of definition, unwarranted construction of language, omission of significant words from the text of the policy, enigmatic and dogmatic statements, and altogether by a course of faulty reasoning which will not hold up under analysis.

FOLLAND, Chief Justice (dissenting).

I must confess that at the time I concurred in the opinion heretofore rendered, I did not have in mind the presence

in the insurance contract of clause "C," quoted and referred to in both opinions on motion for a rehearing. This clause was not mentioned in either the opinion of the court or the dissenting opinion. It has been rather forcibly called to our attention by the briefs on rehearing. I am satisfied that my vote would have been the other way if I had considered the effect of Subdivision "C." For that reason and the further reason that the opinions now written show such a violent difference in our thinking as to warrant further consideration of the case by counsel as well as by the members of this court, I favor a rehearing. It seems a rehearing is not to be granted. Therefore, I concur with the views expressed by Mr. Justice WOLFE in his dissent.